216 N.J. Super. 507 (1987)
524 A.2d 453
FRIEMAN, JACK, C/O DONALD LEGOW, PLAINTIFF-APPELLANT,
v.
TOWNSHIP OF RANDOLPH (MORRIS COUNTY), DEFENDANT-RESPONDENT.
WADLE & LOMAKIN ASSOC., PLAINTIFF-APPELLANT,
v.
TOWNSHIP OF EDISON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 18, 1987.
Decided April 6, 1987.
*509 Before Judges FURMAN, DREIER and SHEBELL.
Steven R. Irwin argued the cause for appellants (Mandelbaum & Mandelbaum, attorneys; Daniel D. Cronheim, of counsel).
Anthony D. Andora argued the cause for respondent Township of Edison (Andora, Palmisano, Harris & Romano, attorneys; Jonathan N. Harris, on the brief).
Jane M. Coviello argued the cause for respondent Township of Randolph (Villoresi, Jansen & Shaw, attorneys; Matthew R. Gabrielson, on the letter brief).
The opinion of the court was delivered by FURMAN, P.J.A.D.
The two taxpayer appeals before us were consolidated because of the common issue of the validity of so-called spot assessments. The Tax Court judgments on appeal affirmed reassessments of plaintiffs' properties one to three years subsequent to district-wide revaluations, as part of limited reassessment programs for properties of certain classes, industrial and commercial properties in Edison Township and apartment complexes in Randolph Township. See Frieman v. Randolph Tp., 8 N.J. Tax 264 (Tax Ct. 1986). We affirm.
In Edison Township, a district-wide revaluation was carried out for the 1983 tax year. Because of concern that industrial *510 and commercial properties had been underassessed, shifting the tax base more towards residential properties, a new study was conducted by the township in 1983, with the concurrence of the County Board of Taxation. As a result of its findings, several appeals to the County Board of Taxation were taken by the township; and the assessments of about half of more than 900 industrial and commercial properties were increased for the 1984 tax year, based upon modifications in income capitalization and depreciation schedules. The assessment for improvements on the commercial property of plaintiff Wadle & Lomakin Associates was increased from $1,113,300 to $1,520,100.
In Randolph Township a district-wide revaluation was carried out in 1982. During 1983 the municipal rent control ordinance was amended to permit re-rental at full market value whenever a rental unit was vacated. Because of that amendment the four apartment complexes within the township were reassessed for the 1985 tax year to reflect the market value effect of so-called vacancy decontrol. The assessment for improvements on plaintiff Frieman's apartment complex was increased from $2,531,800 to $3,752,000.
On both appeals, plaintiffs argue their entitlement to relief from discriminatory spot assessing under Baldwin Const. Co. v. Essex County Bd. of Taxation, 16 N.J. 329 (1954). Baldwin is factually distinguishable. There, the County Board of Taxation had selected geographical areas for revaluation, e.g., about 62 out of 1650 parcels in the City of East Orange. According to the trial judge, the result was an arbitrary increase of assessments on particular properties, "disregarding all like properties", and an increase of "all assessments within a limited area, disregarding all properties outside that area", culminating in a "disproportionate tax burden." Id. at 338. Here, in both townships the selection of properties for revaluation was not arbitrary but based upon a reasonable assumption that, as classes of properties, they might be underassessed; all *511 properties within each of the affected classes were in fact reassessed.
Alternatively, plaintiffs argue that: "If spot assessment is allowable, at very least it should be at ratio." They seek relief under N.J.S.A. 54:51A-6, which provide relief for taxpayers whose assessment to true value ratio exceeds 15% above the average ratio for the taxing district or whose assessment to true value ratio exceeds the county percentage level.
Plaintiff Wadle & Lomakin Associates is barred from relief under N.J.S.A. 54:51A-6 because it offered no proof, and no finding was separately made, of the true value of its property. See Rodwood Gardens Inc. v. Summit, 188 N.J. Super. 34, 43 (App.Div. 1982).
Plaintiff Freiman is also barred from relief under N.J.S.A. 54:51A-6. The Tax Court Judge found the assessed value of his property to be 97% of its true value, well within the common level range of 15% above the township's average ratio of about 95%. The township's average ratio was below the county percentage level of 100%, but the ratio of plaintiff Frieman's assessed value to true value was also below the county percentage level. Thus, a remedy for discrimination under N.J.S.A. 54:51A-6, (b) was precluded. Nor is there any merit to plaintiff Frieman's argument that he should be entitled, notwithstanding N.J.S.A. 54:51A-6, to a reduction of his assessment from 97% of true level to the township's average ratio of 95%. That argument is in derogation of the 15% corridor provided in Chapter 123 of the Laws of 1973, N.J.S.A. 54:1-35a.
Both plaintiffs contend that a Baldwin remedy should be available to them because (1) their respective taxing districts failed to prove that their reassessments did not upset prior uniformity according to district-wide revaluations; and (2) increases in their reassessments necessarily resulted in nonuniformity because such increases reflected increments in land *512 values since the last district-wide revaluation, whereas the other, unchanged assessments failed to reflect subsequent inflationary market forces. We reject both arguments.
In the Edison Township case, the Tax Court Judge found that plaintiff Wadle & Lomakin Associates had not proven that a uniform municipal-wide assessment was disturbed by his reassessment; that, rather, uniformity was not established for the 1983 tax year; and that the 1984 reassessment was itself entitled to the presumption of correctness, Rodwood Gardens, supra at 38. In the Randolph Township case, the Tax Court Judge held:
There is no support for taxpayer's argument that the corridor should be ignored in the case of a substantial increase in the assessment three years after the revaluation year. There is no proof that on October 1, 1984 all of the assessments in the taxing district were uniform, nor is there any proof that by increasing the subject assessment, the assessor upset any uniformity that may have existed. [8 Tax Ct. at 273-274.]
Plaintiffs' argument based on the upward trend in property values is likewise without merit. Under In re Appeals of Kents 2124 Atlantic Ave., Inc., 34 N.J. 21 (1961), a tax assessor has a duty to check sales and other available indicia of property value continuously and to correct inequities in years other than years of district-wide revaluations. Mathematical precision in assessments cannot be achieved and is not constitutionally mandated, see Murnick v. Asbury Park, 95 N.J. 452, 459 (1984).
A reassessment in a year subsequent to a district-wide revaluation is remediable on the ground that it is discriminatory if its ratio to true value is more than 15% above the average ratio of the taxing district. Under N.J.S.A. 54:1-35b, the average ratio is determined annually, reflecting "usable" real estate sales and other data and studies.
Finally, in the Randolph Township case plaintiff Frieman urges that the Tax Court Judge erroneously admitted evidence of a post-assessment date comparable sale on the issue of the *513 appropriate capitalization rate. We agree with his rationale in his published opinion:
I find that the taxing district's capitalization rate of 11.5% is appropriate for the subject property, even though it may be higher than capitalization rates existing in the market as of the assessing date, as indicated by taxpayer's Insurance Council capitalization rate studies, which are confirmed by the taxing district's garden apartment sale at an 11% overall rate in June 1985. This sale, although occurring after the October 1, 1984 assessing date, is current enough to be indicative of the market. A slightly higher capitalization rate of 11.5% is justifiable at this stage of the rent decontrol transition period. [8 Tax Ct. at 272-273.]
We affirm on both appeals.