576 A.2d 881

TOWNSHIP OF WEST MILFORD, PLAINTIFF–APPELLANT, AND ATTORNEY GENERAL OF NEW JERSEY, INTERVENOR–APPELLANT, v. GERALD H. AND JUANITA VAN DECKER, DEFENDANTS–RESPONDENTS.

Argued May 8, 1990—Decided July 24, 1990.

*Harry Haushalter,* Deputy Attorney General, argued the cause for intervenor-appellant (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Michael R. Clancy,* Assistant Attorney General, and *Mary C. Jacobson,* Deputy Attorney General, of counsel).

*Saul A. Wolfe* argued the cause for respondents (*Skoloff & Wolfe,* attorneys).

*Gerald Van Decker* and *Juanita Van Decker* submitted a supplemental *pro se* letter brief.

*Susan R. Oxford,* Assistant Deputy Public Advocate, argued the cause for *amicus curiae* Public Advocate of New Jersey (*Wilfredo Caraballo,* Public Advocate, attorney).

*Gail H. Fraser* on behalf of appellant Township of West Milford relied on the briefs and argument of intervenor-appellant (*Hansbury, Martin & Knapp* attorneys).

*Edward G. Rosenblum* submitted a brief on behalf of *amicus curiae* Association of Municipal Assessors of New Jersey (*Rosenblum & Rosenblum,* attorneys).

The opinion of the Court was delivered by

GARIBALDI, J.

The Township of West Milford (Township) tax assessor increased the appraised valuation to reflect the purchase price of the single-family home that Gerald and Juanita Van Decker had purchased in 1984. The tax assessor also increased the appraised valuation of each of the three hundred forty-six other properties that had been sold in the Township during 1984. At issue is whether the practice of reassessing only properties that were the subject of a recent sale while leaving undisturbed the appraised valuations of properties in the same class that have not been sold constitutes selective or spot assessment that violates the uniformity clause of the New Jersey Constitution, Art. VIII, § 1, para. 1, and the equal protection clause of the fourteenth amendment. We hold that it does.

Moreover, it is axiomatic that no statute can sanction an unconstitutional practice. *N.J. State League of Municipalities v. Kimmelman*, 105 *N.J.* 422, 522 *A.*2d 430 (1987). Accordingly, the Township's reliance on the "protective range" of Chapter 123, *N.J.S.A.* 54:51A–6, to permit its discriminatory-assessment practice is without merit. Therefore, we do not address any issue relating to the scope of and the procedures under Chapter 123.

I

The facts are undisputed.

The Van Deckers purchased a single family dwelling in West Milford on November 2, 1984 for $112,000. At the time of their purchase the property was assessed for $31,900. Solely as a result of their purchase of the property, the West Milford Tax Assessor (tax assessor) increased the assessed value of the property for 1985 from $31,900 to $44,000. Specifically, the tax assessor adjusted the sales price of $112,000 to $110,300 and then applied a ratio of 39.89% to the adjusted sales price to result in the increased assessment of $44,000. The average ratio for West Milford as determined by the Director of the

Division of Taxation pursuant to Chapter 123 (*N.J.S.A.* 54:1–35a) for 1985 was 41.46%. The upper limit of the common level was 47.68% and the lower limit was 35.24%. Although the West Milford tax rate effectively decreased for the year 1985 because of the increased assessment, the Van Deckers' real-estate taxes increased from $2,209.88 in 1984 to $2,341.46 in 1985.

The last district-wide revaluation in West Milford was conducted in 1969 and took effect in 1970. In 1985 there were approximately 12,200 line items on the assessment rolls, including approximately 8,000 one-family residential dwellings, 3,900 vacant-land parcels and the remainder consisting of multi-family residential, commercial, industrial, and farm properties. Of those 12,200 line items the assessor changed 751 assessments; 347 changes, including the Van Deckers, were attributable solely to sales, 213 concerned added assessments for new construction, and the remaining changes "arose from other circumstances not relevant to this proceeding."

The Van Deckers challenged the tax imposed on their property on the ground that they had been intentionally discriminated against. They charged that the Township by taxing them on the basis of the current value of their property while not reappraising the true market value of other property in the same class imposed a greater tax burden on them than on similarly-situated property owners.

The Township, however, argued that even if it had discriminated against new owners, the Van Deckers were not entitled to any relief. Specifically, the Township relied on Chapter 123, which requires that for a taxpayer to claim relief from a tax assessment, the assessment-to-value ratio on that taxpayer's property must exceed the common level by 15%. The Township had raised the taxes on the Van Deckers' property as a result of their recent purchase, but had done so within the Chapter 123 parameters. Thus, the Township argued, as long as its assessment fell within the common-level range of Chapter 123,

it was permissible even if the assessment had been imposed in a discriminatory manner.

The Van Deckers first appealed to the Passaic County Board of Taxation, which rendered judgment for the Van Deckers and reinstated their 1984 tax assessment. West Milford then appealed to the Tax Court, which reversed the County Tax Board's judgment and reinstated the increased assessment. The Tax Court found that the increased assessment on the Van Deckers' property was "directly attributable to [their] purchase." The Court also found that the tax assessor had increased the assessments for each of the 346 other taxpayers who had acquired properties in the Township in 1984, but all the increased assessments, including the Van Deckers, fell within the protective range of Chapter 123.

The Tax Court adopted the logic proposed by the Township: Yes, there was spot assessment, but the Township's assessing practices were permissible so long as the increased assessments fell within the common-level range established by Chapter 123 of plus or minus 15% of the average assessment rate for that district. Moreover, the Tax Court found that Chapter 123 was the "exclusive remedy for assessment discrimination except for extreme, severe or egregious circumstances or unless the application of Chapter 123 still leaves the taxpayer with a confiscatory assessment." Additionally, the court indicated that independent of the Chapter 123 remedy, to prove a constitutional violation a taxpayer would have to show that his or her property has been deliberately and systematically overassessed.

The Van Deckers appealed to the Appellate Division, which reversed the Tax Court and reinstated the original 1984 assessment. In a decision reported at 235 *N.J.Super.* 1, 561 *A.*2d 607 (1989), the Appellate Division declared that the West Milford practice of raising the assessments only of recently-sold homes denied taxpayers the protection of the State and federal Constitutions. The court took judicial notice that that practice resulted in unequal treatment. The Appellate Division overruled

*Quinn v. Jersey City,* 9 *N.J.Tax* 128 (1987), and *Tall Timbers Inc. v. Vernon Twp.,* 5 *N.J.Tax* 299 (1983), to the extent that the holdings in those cases were inconsistent with its finding of unlawful spot assessing.

The Appellate Division then held that Chapter 123 "is not automatically applicable to situations where the Tax Board has reversed an assessor's assessment." 235 *N.J.Super.* at 15, 561 *A.*2d 607. The Court relied on its finding that judgments of county tax boards are presumptively correct. Hence, on appeal from a county tax board judgment a taxing district "has the burden of proof not only of market value, but of the absence of a common level to trigger provisions of Chapter 123." *Ibid.* In other words, the Appellate Division held that municipalities can use Chapter 123's protective range as a shield against a county tax board judgment rendered in favor of a taxpayer only if they prove to the Tax Court that no common-level assessment rate exists.

The Township filed a petition for certification, which we initially denied but then on motion for reconsideration granted. 118 *N.J.* 221, 570 *A.*2d 976 (1989).

## II

■ "Equality of treatment in sharing the duty to pay real estate taxes is a constitutional right." *Murnick v. Asbury Park,* 95 *N.J.* 452, 458, 471 *A.*2d 1196 (1984). That right has been grounded in New Jersey Constitution since the Constitution of 1844. *New Jersey State League of Municipalities v. Kimmelman, supra,* 105 *N.J.* at 428, 522 *A.*2d 430 (quoting N.J. Const. of 1844, art. IV, sec. 7, para. 12 (as amended in 1875). In 1947 Article VIII, Section 1, paragraph 1(a) was amended to read as follows:

> "Property shall be assessed for taxation under general laws and uniform rules. All property assessed and taxed locally ... shall be assessed according to the same standard of value ..."

"Equality of treatment and burden" in property assessments remains a fundamental principle of the New Jersey constitu-

tional mandate. *Baldwin Constr. Co. v. Essex Cty. Bd. of Taxation,* 16 *N.J.* 329, 340, 108 *A.*2d 598 (1954).

New Jersey has long been in the forefront mandating equality of treatment in property taxation. Beginning with the seminal case of *Switz v. Township of Middletown,* 23 *N.J.* 580, 130 *A.*2d 15 (1957), this Court has interpreted the New Jersey Constitution to require that taxpayers be treated in a manner comparable to other similarly-situated taxpayers. Note, "The Road to Uniformity in Real Estate Taxation: Valuation and Appeal," 124 *U.Pa.L.Rev.,* 1418, 1422 (1976). We have long condemned spot assessment because it violates this State's constitutional principle of equality in property taxation. *See In re Appeals of Kents,* 34 *N.J.* 21, 25, 166 *A.*2d 763 (1961) (taxpayer is entitled to treatment commensurate with that given fellow taxpayers within municipality, if it is not accorded, he is entitled to judicial or quasi-judicial remedy).

Section 903.3 of the *Handbook for New Jersey Assessors* acknowledges the settled principle that spot assessment violates the New Jersey Constitution, and warns assessors not to engage in it:

 it appears that assessments in one portion of the taxing district are generally too high or too low, the assessor may be able to make adjustments which will bring them into line with the assessments of the other properties. In making such adjustments, it is essential that they be applied on an area wide basis. Some assessors have made the mistake of changing assessments only on properties which have been sold. This is a very undesirable practice, for it discriminates against certain property owners. The use of such procedure will quickly turn a good assessment list into a bad one.

 By singling out for reassessment only that small group of taxpayers who purchased homes in 1984 while leaving undisturbed the assessments of other property in the class, West Milford deviated from the well-established assessment policy of the State. Such spot assessments known as the "welcome stranger" pattern, are commonly recognized as intentional discriminatory practices.

A related flaw of the system which also affects inter-class equity is known as the 'welcome stranger' pattern. It occurs when some parcels turn over rapidly while others remain in the same ownership for a long period of time. Since

property is generally assessed at the time of its acquisition and is reassessed, if at all, only after a long period of time, those newly-acquired parcels, although they may be equivalent in value to the long-held parcels, are assessed for a higher amount due to appreciation of land values. The 'new' owner-the 'stranger'-will pay higher taxes proportionately than the owner of a long-held parcel who 'welcomes' the fact that he consequently pays lower taxes. If, as was suggested by the Hellerstein court, a fractional assessment system enables a taxing unit to increase revenues without raising the tax rate simply by tampering with the tax base and raising the fraction of assessments, it is conceivable that this 'tampering' combined with the infrequent reassessment of property has resulted in even greater disparities between the newly-acquired and the long-held parcels. [Footnotes omitted]. [Comment, "Hellerstein v. Assessor of the Town of Islip: A Response to Inequities in Real Property Assessments in New York," 27 *Syracuse L. Rev.* 1045, 1061 (1976).]

■ Such spot assessments violate the New Jersey Constitution's uniformity clause. We note that it is arbitrary intentional discrimination that is unconstitutional. A municipality may revise assessments in years other than years of municipal-wide revaluation for legitimate reasons. *See, e.g., Handbook for New Jersey Assessors,* New Jersey State Div. of Taxation (1989) sec. 902.2 (increased property value based on new improvements), sec. 902.3 (addition of formerly-exempt property); and sec. 903.3 quoted at 361, 576 *A.*2d at 884; *Schwam v. Township of Cedar Grove,* 228 *N.J.Super.* 522, 550 *A.*2d 502 (App.Div. 1988), *certif. denied,* 115 *N.J.* 76, 556 *A.*2d 1219 (1989) (reassessment of apartments converted to condominiums); *Frieman v. Randolph Township,* 216 *N.J.Super.* 507, 524 *A.*2d 453 (App.Div.1987), *certif. granted,* 108 *N.J.* 665, 532 *A.*2d 242 (1987), *appeal dismissed,* 110 *N.J.* 294, 540 *A.*2d 1276 (1988) (reassessment of all apartment complexes in township based on adoption of vacancy decontrol ordinance, and reassessment of all industrial and commercial properties based on study showing they were underassessed as a class). However, under no circumstances can appraised valuation of property be increased merely because it has been sold.

■ West Milford's practices also violated the equal-protection clause of the fourteenth amendment. In *Baldwin v. Construction Co., supra,* this Court held that "the right of equal treatment ... secured [by the fourteenth amendment] 'protects

the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class'...." 16 *N.J.* at 341, 108 *A.*2d 598 (citing *Hillsborough Township v. Cromwell*, 326 *U.S.* 620, 623, 66 *S.Ct.* 445, 448, 90 *L.Ed.* 358 (1946)). The Federal Constitution does not require absolute equality and does not afford protection against mere errors in judgment. But "intentional violations of the essential principle of practical uniformity" imposes a constitutional wrong requiring an effective remedy. *Id.* 16 *N.J.* at 342–45, 108 *A.*2d 598 (citations omitted). "The fairness of one's allocable share of the total tax burden property can only be meaningfully evaluated by comparison with the share of others similarly situated relative to their property holdings." *Allegheny Pittsburgh Coal Co. v. County Comm'n*, 488 *U.S.* 336, ——, 109 *S.Ct.* 633, 639, 102 *L.Ed.*2d 688, 698–99 (1989). Discrimination under the Equal Protection clause occurs when a property is intentionally assessed at a higher percentage of true value than similarly-situated properties, and this "in fact bears unequally on persons or property of the same class." *Id.* at ——, 109 *S.Ct.* at 639, 102 *L.Ed.*2d at 698 (quoting *Charleston Fed. Savings & Loan Ass'n v. Alderson*, 324 *U.S.* 182, 190, 65 *S.Ct.* 624, 629, 89 *L.Ed.* 857, 863 (1945)).

In *Allegheny Pittsburgh Coal Co. v. County Comm'n, supra*, the United States Supreme Court explained that while taxpayers cannot simply claim damages as a result of being taxed at a percentage of the price they paid for a property at a recent purchase, they do have a constitutional complaint if similarly situated property is assessed at only a fraction of current value. Justice Rehnquist, writing for a unanimous Court, stated that

petitioners have no constitutional complaint simply because their property is assessed for real property tax purposes at a figure equal to 50% of the price paid for it at a recent arm's-length transaction. But their complaint is a comparative one: while their property is assessed at 50% of what is roughly its current value, neighboring comparable property which has not been recently

sold is assessed at only a minor fraction of that figure. [*Id.* at ——, 109 *S.Ct.* at 637, 102 *L.Ed.*2d at 696.]

Likewise the Van Deckers' complaint is not that their house was assessed for property tax purposes at a figure equal to 39.89% of their home's current value. Instead, the Van Deckers' complaint is that the Township of West Milford has not conducted a uniform assessment since 1970, and because of this, comparable properties that have not been recently sold reflect the fair market value of a bygone era and carry a much lower tax burden.

Accordingly, the Township practice of increasing the assessed value only of homes purchased in the Township in 1984 and leaving the value of other homes undisturbed constitutes spot assessment in violation of the federal and state constitutions.

## III

No statute can overturn the New Jersey Constitution's guarantee to its citizens that real estate "shall be assessed according to the same standard of value" or deny a citizen equal protection under the fourteenth amendment. If there is a conflict between the constitutional and statutory standards, this Court has held unequivocally that the constitutional guarantee of equality must prevail. *New Jersey State League of Municipalities v. Kimmelman, supra,* 105 *N.J.* at 428, 522 *A.*2d 430 (statute prohibiting newly-constructed dwellings from being added to real-estate-tax assessment list until certificate of occupancy had been issued and dwelling occupied violated constitutional uniformity provision and therefore could not stand); *Switz v. Middletown Township, supra,* 23 *N.J.* 580, 130 *A.*2d 15 (statute providing preferential treatment for farmland was held unconstitutional as violating uniformity clause). Accordingly, the Township's reliance on Chapter 123 to permit spot discrimination is meritless.

The conclusion that Chapter 123 is inapplicable to this situation does not conflict with our decision in *Murnick v. Asbury*

*Park, supra,* 95 *N.J.* 452, 471 *A.*2d 1196, where we held that the statute provides the measure of relief in the overwhelming number of cases. In *Murnick* we held that "[i]n egregrious cases of discrimination, a taxpayer retains a constitutional right to relief." *Id.* at 455, 471 *A.*2d 1196. This case presents an egregious case of discrimination, and as such, is one of a narrow few that falls outside of the scope of Chapter 123.

We agree with the Appellate Division that Chapter 123 is not applicable. Accordingly, the Appellate Division's discussion regarding procedural or burden-of-proof issues relating to Chapter 123 was not essential to its decision and clearly constituted *dicta.* We do not address any procedural or burden of proof issues relating to Chapter 123, including whether a taxing district is obligated to prove the absence of a common level in order to rely on the provisions of Chapter 123.

The remedy in this case, as dictated by the state and federal Constitutions, is to strike the Township's assessment resulting from the selective practice and restore the 1984 assessed valuation.

The judgment of the Appellate Division is affirmed.

Chief Justice WILENTZ and Justices HANDLER and STEIN join in this opinion.

Justice POLLOCK has filed a separate concurring opinion in which Justice CLIFFORD joins.

Justice O'HERN has filed a separate concurring opinion.

POLLOCK, J., concurring.

We held in *Murnick v. Asbury Park,* 95 *N.J.* 452, 455, 471 *A.*2d 1196 (1984), that Chapter 123 provides the exclusive remedy for property-tax discrimination except when there is a violation of constitutional rights. This case is that rare one in which Chapter 123 does not establish "both the right to and measure of relief." *Ibid.* It presents an egregious case of discrimination. *Ibid.* The Court correctly finds unconstitutional the

practice of reassessing properties solely because those properties have been sold in the previous year. *Ante* at 357, 576 *A*.2d at 882. That practice is patently unconstitutional because it discriminatorily shifts the municipal-tax burden to new owners in the municipality, sometimes called "welcome strangers." Thus, relief is available outside of Chapter 123.

I join in the Court's affirmance of the Appellate Division's declaration of the unconstitutionality of the challenged assessment. I disagree, however, with the *dicta* in the Appellate Division opinion "that in order for Chapter 123 to be implicated the taxing district must establish that there was no common level, and that the county board judgment was at a ratio which could not be justified within the confines of the assessment ratios of the taxing district." 235 *N.J.Super.* 1, 16, 561 *A*.2d 607 (1989). Because of the importance of tax relief to taxpayers and taxing districts, I believe that this Court should do more than simply state that "the Appellate Division's discussion regarding procedural or burden-of-proof issues relating to Chapter 123 was not essential to its decision and clearly constituted *dicta.*" *Ante* at 365, 576 *A*.2d at 886.

In restricting Chapter 123 to situations in which there is no common level, the Appellate Division reasoned that the Chapter "was not intended as a protective range for affirmative assessing practices by an assessor which would effectively preclude a reviewing tax board or Tax Court from affording a remedy or correcting assessments where a common level existed." 235 *N.J.Super.* at 20, 561 *A*.2d 607. More to the point, the Appellate Division concluded that "in order for Chapter 123 to be implicated the taxing district must establish that there was no common level * * *." *Id.* at 16, 561 *A*.2d 607. In restricting recourse to Chapter 123 to those situations in which there is no common level of assessment, I believe the Appellate Division has misread the statute.

We held in *Murnick* that the Chapter 123 ratio "establishes a rebuttable presumption of the common level assessment,"

which can be overcome only by a showing that its application "would be 'virtually confiscatory.'" 95 *N.J.* at 462–63, 471 *A.*2d 1196. That presumption applies whether the statute is imposed by the taxpayer or the taxing district.

The Appellate Division's distinction between invocation of Chapter 123 by a taxpayer or taxing district contravenes the statutory language. The relevant provision states:

> Whenever the tax court is satisfied by the proofs that the ratio of the assessed valuation of the subject property to its true value exceeds the upper limit or falls below the lower limit of the common level range, it shall enter judgment revising the taxable value of the property by applying the average ratio to the true value of the property * * *. [*N.J.S.A.* 54:51A–6a.]

Thus, the Tax Court must revise an assessment whenever it is satisfied that a property-tax assessment falls outside of the common-level range, whether the assessment is above or below that range. The statute does not distinguish between the taxing district and the taxpayer. Consequently, the Appellate Division erred in precluding recourse by a municipality to Chapter 123. True, *Murnick* involved a taxing district where there was no common level of assessment. 95 *N.J.* at 456, 471 *A.*2d 1196. Contrary to the Appellate Division's conclusion, however, nothing in *Murnick* suggests that Chapter 123 should be restricted to situations involving the absence of such a level.

The Appellate Division *dicta* not only runs counter to the plain words of the statute, it could lead to bad assessing practices. A "common level" is that level of assessment toward which all properties in a municipality tend to gravitate. *In re Appeal of Kents 2124 Atlantic Ave.*, 34 *N.J.* 21, 26, 166 *A.*2d 763 (1961). A municipality can produce a true common level only by diligently updating its assessment lists. The more haphazard the assessing practices, the less likely it is that the municipality will enjoy a common level of assessment. Instead, assessed-to-true-value ratios will be randomly disbursed over a broad spectrum, and will not converge on any discernible, unitary level. By restricting a municipality's recourse to Chapter 123 to those situations in which there is no common level of assessment, the Appellate Division *dicta* unintentionally en-

courages assessors to neglect their duty to keep tax rolls current.

Chapter 123 was enacted to simplify the process of ensuring equality in property taxation. In addition to relieving taxpayers' burden of proof of discrimination, *Murnick, supra,* 95 *N.J.* at 462–63, 471 *A.*2d 1196, its ratio is useful as an assessing tool for taxing districts. If districts are diligent in updating tax rolls, the Chapter 123 ratio provides a useful benchmark of equality.

Before the enactment of Chapter 123, taxpayers were handicapped in trying to prove the common level in a municipality. *Id.* at 459, 471 *A.*2d 1196. Often a common level did not exist because the municipality did not use a consistent method of assessment. *Ibid.* If applied consistently by taxing districts, the Chapter 123 ratio will lead to a common level of assessment. Also, if the ratio was incorrectly calculated, a taxpayer may challenge it in the Tax Court. *Id.* at 464, 471 *A.*2d 1196. Consequently, I would reject the Appellate Division's *dicta* concerning Chapter 123.

Justice CLIFFORD joins.

O'HERN, J., concurring.

I agree with the proposition that the better remedy for unauthorized "spot assessment" is the reinstatement of the existing assessment. The Chapter 123 remedy insufficiently vindicates the assessment obligation violated by the practice. In many instances there would really be a right without a remedy and no effective way to deter the practice.

I cannot agree, however, that there is any need to federalize the issues in this case. The Court concludes that the assessment practice violates the equal-protection clause of the fourteenth amendment, citing *Allegheny Pittsburgh Coal Co. v. County Comm'n,* 488 *U.S.* 336, 109 *S.Ct.* 633, 102 *L.Ed.*2d 688 (1989). This case is light years away from the *Allegheny Pittsburgh* case. In that case, the Court noted that the taxpay-

ers' property "has been assessed at roughly 8 to 35 times more than comparable neighboring property, and these discrepancies have continued for more than 10 years with little change." *Id.* at ——, 109 *S.Ct.* at 638, 102 *L.Ed.*2d at 697. Respondents have not proven disparities of that magnitude in the assessed value of comparable properties.

The scenario posed here by the Appellate Division was that the Van Deckers' assessment was about one-fifth more than comparable recently-sold property (this based on the Appellate Division's conclusion that the average ratio in the Township based on 469 residential sales was 32.93%, while the Van Deckers' property following the assessment increase was assessed at 39.89%). 235 *N.J.Super.* 1, 11 & 6, 561 *A.*2d 607 (1989).

Recall that the assessor in effect gave something like Chapter 123 relief when she reduced the Van Deckers' assessment to 39.89% of true value. By definition, use of an "average ratio" is a measure designed to eliminate unequal taxation. It produced "a rough equality in tax treatment of similarly situated property owners," *Allegheny Pittsburgh Coal Co., supra,* 488 *U.S.* at ——, 109 *S.Ct.* at 638, 102 *L.Ed.*2d at 697, all that is required to pass federal-constitutional muster. We set aside the assessment not because the resulting valuation is not roughly equal to comparable properties (for after all, that is the result of the application of the average ratio), but because the starting point of the process, the spot assessment, surely violates the Uniformity Clause of the New Jersey Constitution, and is a practice that we wish to deter.

*For affirmance*—Chief Justice WILENTZ, and Justices STEIN, HANDLER and GARIBALDI—4.

*Concurring in result*—Justices CLIFFORD, POLLOCK and O'HERN—3.