MENYUK, J.T.C.
This constitutes the court’s decision following trial of the above-referenced matters. At issue is whether L. 2001, c. 101 (hereinafter “Chapter 101”), amending N.J.S.A. 54:4-23, was unlawfully applied in these cases.[2] The court previously rejected challenges to the facial constitutionality of Chapter 101 in a published decision, Chadwick 99 Associates v. Director, Division of Taxation, 23 N.J.Tax 390 (2007).
In general terms and as applicable here, Chapter 101 provides that if an assessor has reason to believe that property comprising a part of the taxing district has been assessed at a value that is inconsistent with the uniform valuation of property within that taxing district, the assessor may reassess that part of the taxing district after he or she has applied to and obtained the approval of the applicable county board of taxation and the Division of Taxation (“Division”) for the proposed plan of reassessment (called a “compliance plan” by the statute). N.J.S.A. 54:4-23.
Plaintiffs, the owners of eleven apartment properties in Linden-wold Borough, contend that the compliance plan reassessing all of the apartment properties in Lindenwold effective with tax year 2003, was invalid because the municipal assessor relied solely on *497 the sales of six apartment properties in concluding that apartment complexes in Lindenwold were undervalued and should be reassessed. The assessor had previously determined that those six sales were nonusable for purposes of the annual study conducted by the Director, Division of Taxation (“Director”) of the ratio of assessments to true or market value. This study is conducted for the purpose of promulgating the “average ratio,” frequently called the “Chapter 123 ratio” enacted as part of L. 1973, c. 123. See N.J.S.A. 54:l-35a(a) (defining average ratio). See also N.J.A.C. 18:12-1.1(a) (enumerating categories of nonusable sales); Township of Pennsville v. Director, Div. of Taxation, 16 N.J.Tax 47, 52-3 (App.Div.1996) (describing the Director’s sales study and the treatment of nonusable sales by that study). Plaintiffs contend that the defendants’ reliance on these nonusable sales was invalid, and that their properties were arbitrarily and invalidly selected and approved[3] for reassessment in violation of the Uniformity Clause, N.J. Const, art. VIII, § 1,111(a).
I find the facts as follows. Lindenwold underwent a complete revaluation effective for tax year 1996. Thomas dock, the Lindenwold assessor, and plaintiffs’ only witness, testified that subsequent to that revaluation, there was a change in the value of apartment complexes within Lindenwold due, in his opinion, to an ordinance adopted by the municipal governing body that effectively decontrolled rents. Prior to adoption of the ordinance in September 1999, apartment rentals in Lindenwold were subject to rent stabilization. Under the new ordinance, once an apartment became vacant, the landlord was thereafter permitted to set the rent at any amount the landlord wished.
According to Mr. Gloek, he became aware of the change in the market value of apartment complexes in Lindenwold by reviewing the deeds of sales of apartment properties. In October 2002, Mr. *498 Glock applied for approval of a compliance plan to reassess all the apartment complexes in Lindenwold using a form created by the Division of Taxation (“Division”).[4] The application stated that there were twenty-five apartment properties in Lindenwold, all of which were part of the proposed compliance plan, and that six sales of apartment properties had taken place between June 21, 2000 and June 30, 2002. On direct examination by plaintiffs’ counsel, Mr. Glock reviewed those sales and confirmed that he had marked them as nonusable for purposes of the Director’s sales ratio study. See City of Atlantic City v. Director, Div. of Taxation, 24 N.J.Tax 1, 8-9 (2008), appeal pending, (App.Div. March 24, 2008) (No. A3495-07T1) (describing assessor’s role in classifying sales as usable and nonusable for the sales ratio study). On cross-examination by counsel for Lindenwold, Mr. Glock testified that he had marked the six apartment complex sales as nonusable for purposes of the Director's sales ratio study because he believed that the sale prices did not reflect market value. He nevertheless considered them in determining the need for a reassessment of all apartment properties, again emphasizing that the rent decontrol ordinance took effect subsequent to the last complete revaluation in Lindenwold,[5] and that the assessments for the apartment properties determined in that revaluation were based on rents subject to a rent control regime.
The compliance plan application required Mr. Glock to state the ratio of assessed to true value of the apartment properties, based on sales, and also to state the Director’s average ratio promulgated as of October 1, 2002. Mr. Glock filled in that form to indicate that the ratio of assessed to time or market value of apartment properties in Lindenwold was 68.87%, and that the Director’s average ratio of assessed to true value in Lindenwold as of *499 October 1, 2002 was 97.68%. The reassessment as proposed by Mr. Glock was to establish an appropriate assessment for each apartment property by first ascertaining the true or market value of each property and then multiplying that value by the Director’s average ratio as of October 1, 2002.
Mr. Glock also testified that, following approval of the compliance plan by the Division, he utilized the services of a real estate appraisal firm, Renwick & Associates (“Renwick”) to assist him in determining the valuations of the twenty-five apartment properties. He provided Renwick with the income and expense information obtained from the property owners pursuant to N.J.S.A. 54:4-34. The income approach to valuation rather than a comparable sale approach to valuation was used to set the assessments. See, e.g., Parkway Vill. Apartments Co. v. Township of Cranford, 108 N.J. 266, 270, 528 A.2d 922 (1987) (the income method is generally preferred for valuing income-producing property for tax assessment purposes). The determination of economic rent is central to the income approach to valuation, ibid., and generally, rentals increase following rent decontrol. This court has held that, in a vacancy decontrol transition period, the proper method of valuation and assessment is an income approach using an economic rent derived from annualizing actual rents as of the assessing date, which takes into account that the rentals change as more apartments rent at a free market rate. Frieman v. Township of Randolph, 8 N.J.Tax 264, 271 (1986), aff'd, 216 N.J.Super. 507, 524 A.2d 453 (App.Div.1987).
Patricia Wright, the Division’s chief of policy and planning with respect to local property taxation, and the Division’s only witness, participated in the Division’s approval of Lindenwold’s proposed compliance plan. According to Ms. Wright, before the compliance plan was approved, she met in Lindenwold with Mr. Glock; one or more representatives of Renwick, which had performed a preliminary analysis of the income and expenses of the twenty-five apartment properties in Lindenwold; and one or more representatives of the Camden County Board of Taxation (“County Board”). Ms. Wright stated that the proposed Lindenwold compliance plan was one of the first compliance plans that had been submitted to *500 the Division since the effective date of Chapter 101, which was June 14, 2001. Ms. Wright testified:
[0]ur procedure was that these [applications for compliance plans] weren’t going to be the easiest thing to determine, so that we would go to the assessor’s office. We would invite the County Board to come, too, and go over whatever information they wanted to provide, whether [it] had come with the plan or it was at their office.
According to Ms. Wright, the primary basis for the Division’s approval of the plan was the fact that the apartment properties in Lindenwold were undergoing rent decontrol. At the meeting in Lindenwold, representatives of the Renwiek appraisal firm reviewed income approach valuations for the apartment properties. A letter from Renwiek to Ms. Wright dated October 29, 2002, summarized that presentation, and stated that income and expense data supplied by the assessor had been analyzed and stabilized to estimate rough market values for the apartment complexes in Lindenwold, using the income approach to valuation. The letter concluded by stating that, “[t]he average ratio of the 2002 assessed value to the preliminary indicated value of the properties analyzed is 71.94%, with the median ratio being 73.81%.”
That letter was admitted in evidence on the Division’s motion over the objection of plaintiffs’ counsel, who argued that she had repeatedly requested documents containing the back-up data for the income and expense analysis performed by Renwiek and summarized in the October 29, 2002 letter. While Renwiek had apparently provided a more complete presentation of its income approach at the meeting, the only document given to the Division was the summary set forth in the letter of October 29, 2002, which was promptly provided to the plaintiffs following their discovery request. Accordingly, the plaintiffs’ objection to the letter’s admission was overruled.[6]
*501 Ms. Wright testified that, at the meeting, Mr. Clock had been asked whether the six sales of apartment properties were usable sales, but that he did not provide that information at the meeting and did not send it to her by the time the Division made its decision. Ms. Wright testified that the Division approved the plan based on the rent decontrol ordinance and the income analysis of the apartment properties. She stated that the income approach is more relevant for the type of properties being considered than whether a sale was usable or nonusable. She conceded, however, that at the time the Division approved the compliance plan, she assumed that the six sales were usable sales.
Plaintiffs argue that the assessor’s application for a reassessment of Lindenwold apartment properties violates the Uniformity Clause, N.J. Const, art. VIII, § 1, 11(a), because the assessor relied on “defective data,” namely the six sales of apartment properties that the assessor had marked as nonusable sales for purposes of the Director’s sales ratio study. Plaintiffs contend that the assessor’s actions amount to selective assessment comparable to that found invalid in West Milford Township v. Van Decker, 120 N.J. 354, 576 A.2d 881 (1990).
The Uniformity Clause provides:
Property shall he assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall he assessed according to the same standard of value, except as otherwise permitted herein, and such real property shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of such (axing district.
\N.J. Const, art. VIII, § 1,111(a)].
The historical context in which the Uniformity Clause was adopted as part of the 1947 New Jersey Constitution is extensively reviewed and discussed in New Jersey State League of Municipalities v. Kimmelman, 105 N.J. 422, 427-36, 522 A.2d 430 (1987), in which the Court concluded that the clause was a compromise, whereby there would be no requirement that property be taxed at *502 “true value,” but “would require that as to real property, then and now the lifeblood of local government, discriminatory burdens be forever barred.” Id. at 433, 522 A.2d 430. The Uniformity Clause “rais[es] a constitutional bar against the preferential treatment of one industry or class of property. That constitutional prohibition against preferential tax treatment of any type or class of real property has been expressly acknowledged, fully recognized, and consistently followed by the courts.” 2nd Roc-Jersey Assocs. v. Town of Morristown, 158 N.J. 581, 591, 731 A.2d 1 (1999). “[A]ny determination of whether a statute violates article VIII of the State Constitution must first look to whether real property is being taxed at nonuniform rates within a taxing district....” Town of Secaucus v. Hudson County Bd. of Taxation, 133 N.J. 482, 503-04, 628 A.2d 288 (1993).
In Van Decker, the assessor reassessed only those homes in the municipality that had been recently sold in order to reflect the purchase price. Van Decker, supra, 120 N.J. at 357, 576 A.2d 881. As stated by our Supreme Court, the issue in that case was “whether the practice of reassessing only properties that were the subject of a recent sale while leaving undisturbed the appraised valuations of properties in the same class that have not been sold constitutes selective or spot assessment that violates the uniformity clause____” Ibid, (emphasis added). The Court concluded that “[b]y singling out for reassessment only that small group of taxpayers who purchased homes in 1984 while leaving undisturbed the assessments of other property in the class,” id. at 361, 576 A.2d 881, (that is, other single family homes), West Milford had engaged in an intentional discriminatory practice forbidden by the Uniformity Clause. Id. at 362, 576 A.2d 881.
In Van Decker, the last complete municipal revaluation had taken place fifteen years before the reassessment of the Van Decker property. Id. at 358, 576 A.2d 881. The Court explained that when only those single family residences that had been recently sold were selected for reassessment, while the assessments on single family residences that had not been sold (and may not have been sold since the last revaluation) remained the same, the newly sold properties inevitably had higher assessments due *503 to appreciation of land values, even though their market value was equivalent to properties that had not been sold and therefore had not been reassessed. Id. at 361-62, 576 A.2d 881, citing Comment, Hellerstein v. Assessor of the Town of Islip: A Response to Inequities in Real Property Assessments in New York, 27 Syracuse L.Rev. 1045, 1061 (1976).
The Court emphasized that “it is arbitrary intentional discrimination that is unconstitutional. A municipality may revise assessments in years other than years of municipal-wide revaluation for legitimate reasons.” Van Decker, supm, 120 N.J. at 362, 576 A.2d 881. Among other examples of non-arbitrary, legitimate selection of properties for assessment cited by the Court was the reassessment of all apartment properties in a municipality based on the adoption of a vacancy decontrol ordinance. Ibid, (citing Frieman v. Randolph Twp., 216 N.J.Super. 507, 524 A.2d 453, (App.Div.), certif. granted, 108 N.J. 665, 532 A.2d 242 (1987), appeal dismissed, 110 N.J. 294, 540 A.2d 1276 (1988) (rejecting the argument of the plaintiff apartment building owner that reassessment of apartment properties within a taxing district following adoption of a rent decontrol ordinance constituted invalid spot assessment)).
As demonstrated by Van Decker, our Supreme Court has consistently recognized that the Uniformity Clause requires that property must be assessed at the same standard of value within a taxing district, but that adherence to this constitutional mandate does not necessarily require full reassessment or revaluation every year:
The law calls for the separate assessment of each parcel annually at its true value on the assessing date. While practicalities obviously preclude most assessors reviewing every assessment line item every year, there should nevertheless be alertness to changed valuation factors peculiarly affecting individual properties in years between revaluations and requiring prompt revision of such assessments in fairness to the particular taxpayer or to the taxing district. It should be obvious that, absent such attention, the carrying over of assessments each year from one general revaluation to the next is not the proper discharge of the assessor’s function.
[Tri-Terminal Corp. v. Edgewater Borough, 68 N.J. 405, 413-14, 346 A.2d 396 (1975) (citations omitted) ].
The fundamental principle expressed by the Uniformity Clause is that there must be equality of treatment and equality of *504 burden in property tax assessments. Baldwin Constr. Co. v. Essex County Bd. of Taxation, 16 N.J. 329, 340, 108 A.2d 598 (1954); Van Decker, supra, 120 N.J. at 360-61, 576 A.2d 881. Equality of treatment does not mean that an assessor may not select a group of similar properties for reassessment. To the contrary, in order to ensure equality of burden, some properties must be singled out for reassessment if their market values are increasing or decreasing at a rate that is different from the rest of the taxing district.
In the present case, the plaintiffs have made no attempt to demonstrate that they have been discriminated against because the compliance plan caused their properties to be taxed at a higher (or lower) standard of value than other property in Linden-wold.[7] Plaintiffs’ complaints are limited to the alleged arbitrary selection of their properties for reassessment, comparing their situation to that of the plaintiffs in Van Decker, where the arbitrary selection resulted in the assessment of properties of the same class at non-uniform standards of value. Van Decker, supra, 120 N.J. at 361-62, 576 A.2d 881. I conclude that the plaintiffs’ properties (along with all other apartment properties in Linden-wold) were reasonably selected as a consequence of the implementation of rent decontrol. Further, the evidence supports the defendants’ findings that the apartment properties were generally assessed at a lower standard of value than that of other properties in Lindenwold.
The plaintiffs correctly point out that the ratio of assessed to true or market value for apartment properties as compared with the Director’s average ratio is necessarily suspect where the apartment sales used to compute that ratio have been marked “nonusable” by the assessor. Plaintiffs assert that, if a sale is not *505 usable for purposes of the Director’s sales ratio study, municipalities should be barred from considering nonusable sales in determining whether a compliance plan is warranted. Plaintiffs emphasize that the Director’s average ratio plays an important role in determining whether a county board of taxation should order a municipality to conduct a complete revaluation, N.J.A.C. 18:12A-1.14(b)(l)(v), and that certain sales whose values do not accurately reflect market value are excluded from the Director’s sales ratio study. NJ.A.C. 18:12-l.l(a). See ako, N.J.A.C. 18:12A-1.14(i)(3)(i) (providing that the average ratio for a municipality must be greater than 75% for a compliance plan to be approved). See generally, N.J.A.C. 18:12A:1.14(i) (the Director’s regulation regarding compliance plans, including criteria for approval of such plans), adopted after Lindenwold’s compliance plan was approved. See 36 N.J.R. 1022(a) (February 17, 2004).
A sale that falls into one of the thirty-three (formerly twenty seven) categories of nonusable sales enumerated in N.J.A.C. 18:12-1.1(a) does not automatically mean that it was not a sale at market value.
Those categories serve as “a shorthand indicator of those sales that are unlikely to have involved arms-length bargaining' and therefore are unlikely to have been made at fair market value.” ‘‘The ultimate objective [of the Director) is to determine not whether a sale fits into one of the nonusable categories but whether the sale was an arms-length transaction, reflective of the fair market value of the underlying property.”
[Township of Pennsville v. Director, Div. of Taxation, supra, 16 N.J.Tax at 53 (citations omitted)].
Although it was Mr. Glock’s opinion that the six sales of apartment properties that he had marked unusable were not reflective of market value, it was his testimony that the sales indicated to him that the market conditions at the time of the sales were different than those in 1996, when the apartment properties’ assessments were established at the time of the last full revaluation. It was also his testimony that shortly after the rent decontrol ordinance went into effect, “we witnessed apartment complexes starting to market themselves and sell at substantially higher considerations than what they were assessed for. This led up to the ultimate, you know, the filing of the compliance plan.”
*506 I conclude that Mr. Glock’s use of nonusable sales in evaluating the need for a compliance plan was not per se invalid as plaintiffs contend. There was sufficient evidence, in addition to the sales, to conclude that the defendants’ reasonably determined that plaintiffs’ properties were under-assessed and that a compliance plan was warranted.
Viewed in the light most favorable to plaintiffs, it is likely that Mr. Gloek had determined to seek approval of a compliance plan whether or not the six sales were reliable indicators of market value, because it was his opinion that the market values of apartment properties in Lindenwold were increasing as a consequence of rent decontrol. In other words, it is probable that he did not make his decision to seek approval for a reassessment of the apartment properties solely because of the sales; rather, the sales supported a decision he had already made.
The decision to apply for approval of a compliance plan on the basis of rent decontrol is not invalid, however, because it can reasonably be expected that the market value of apartment properties in a transition period from rent control to free market rentals will increase as rents rise to market levels. As afready noted, the Supreme Court of New Jersey expressly approved a partial reassessment of apartment properties that were subject to rent decontrol. Van Decker, supra, 120 N.J. at 362, 576 A.2d 881 (citing Frieman v. Randolph Twp., supra, 216 N.J.Super. 507, 524 A.2d 453). Plaintiffs’ unsuccessfully attempt to distinguish Frieman on the ground that the reassessment in that case was undertaken shortly after rent decontrol went into effect and in this ease, the application for the compliance plan was made three years after the adoption of the rent control ordinance. The Lindenwold ordinance permitted market rent to be charged only upon a vacancy, and there may have been no immediate effect on market value warranting a reassessment. That the assessor waited some time following rent decontrol to determine that the market values of apartment properties were increasing is evidence that the assessor was cautious rather than arbitrary as plaintiffs allege. I conclude that plaintiffs are not entitled to continued underassess *507 ment because of the assessor’s failure to act immediately upon passage of the rent decontrol ordinance.
When the Division and the County Board met with the Linden-wold assessor regarding the compliance plan, representatives of Renwick were also present. Lindenwold had retained Renwick to perform an income and expense analysis of the apartment properties in Lindenwold. As Ms. Wright testified, she reviewed the income and expense analysis performed by Renwiek at the meeting and asked Renwick to provide a written summary of that information to include in her documentation of the proposed compliance plan. That summary stated that the average 2002 ratio of assessments to “rough” market values of the twenty-five apartment properties in Lindenwold (as developed through the preliminary analysis of income and expenses) was 71.94%, as compared with the Director’s Chapter 123 average ratio for the entire municipality of 97.68%, indicating that the apartment properties as a group were substantially underassessed as compared with the rest of the municipality. The ratio of assessments to true or market value of the apartment properties developed through the income approach, 71.94%, was close to the ratio developed from the six sales of apartment properties, 68.87%.
Ms. Wright testified that, based on the income approach information and on the rent decontrol ordinance, there was sufficient evidence to approve the compliance plan. It was also her testimony that had she known that the six sales of apartment properties were nonusablo, she would still have approved the plan. The Division’s current regulation setting forth standards for compliance plans, N.J.A.C. 18:12A-1.14(i), requires an assessor contemplating a partial reassessment to review all areas of the municipality whether or not an area has had any sales. “If there are no sales, the assessor must submit an explanation, analysis and supporting documentation from whatever other information or professional judgment is available, to support why that neighborhood or part is being selected, or not, for adjustment pursuant to assessment maintenance.” N.J.A.C. 18:12A-1.14(i)(3)(vii).
*508 The Division also pointed out that its current regulation provides that no compliance plan is required where assessments are changed because of changes in value due to, among other things, “governmentally imposed restrictions.” N.J.A.C. 18:12A-1.14(i)(3)(viii). According to Ms. Wright, she would regard rent control and rent decontrol as governmentally imposed restrictions that would not require a compliance plan under the current regulation.
In their post-trial brief, plaintiffs contended that comparison of the ratio of assessed to true value of the apartment properties as developed by Renwick through the income approach to the Director’s average ratio is not convincing because “one cannot adequately compare ratios by taking the current income and expenses of the apartment buildings ... [which] produces a current unweighted, one-year ratio, while the school aid [Director’s] ratio is based on two parts year ending June 30th of the pre-tax year, plus one part of the ratio similarly constructed for the previous year.” I conclude that plaintiffs have not demonstrated that the methodology employed here is arbitrary. It is a reasonable methodology for estimating the disparity in the assessments of apartment properties as compared with other properties in Lindenwold. “[A] tax assessor has a duty to check sales and other available indicia of property value continuously and to correct inequities in years other than years of district-wide revaluations. Mathematical precision in assessments cannot be achieved and is not constitutionally mandated.” Frieman v. Randolph, supra, 216 N.J.Super. at 512, 524 A.2d 453 (emphasis added) (citation removed). Significantly, without usable sales of apartment properties, it is impossible to construct a ratio of assessed to true value for apartment properties that would duplicate the methodology used in computing the Director’s average ratio for the same time period.
For the foregoing reasons, I conclude that the assessor’s selection of all of the apartment properties in Lindenwold for reassessment effective in tax year 2003 and the Division’s approval of that compliance plan, and the County Board’s acquiescence in the plan were not arbitrary, capricious or unreasonable and were not in *509 violation of the Uniformity Clause. The properties were selected based on the enactment of a rent decontrol ordinance in 1999, and the effect of that ordinance on the market value of those properties. That effect was demonstrated by the analysis of income and expenses performed by the Renwick firm, and to a less reliable extent by the nonusable sales of six apartment properties. Both approaches indicated that apartment properties in Lindenwold were substantially under-assessed as compared with the rest of the municipality. The complaints are therefore dismissed with prejudice.

 The cases were consolidated for purposes of trying and deciding the common issue of the validity of Chapter 101. Some of the plaintiffs have also instituted separate, conventional property tax appeals which are not consolidated with these matters.

 Defendant Camden County Board of Taxation did not actually take any formal action. By the terms oí Chapter 101, the compliance plan was deemed approved because the plan was approved by the Director and the assessor did not receive notification from the County Board within forty-five days of its submission. N.J.S.A. 54:4-23.

 Mr. Glock submitted an application in September 2002, but the Division either rejected or returned it to him for revision because the application failed to include the Director’s average ratio promulgated as of October 1, 2002.

 Mr. Glock testified that he believed the rent control ordinance was adopted in 1997. The copy of the ordinance placed in evidence indicated that it was adopted in 1999.

 In deposition testimony filed with the court in connection with an earlier motion in this matter, Mr. Glock indicated that "value conclusions" rather than full appraisals were prepared by Renwiek for all of the apartment properties in Lindenwold, and that Renwiek retained the documentation. The attorney representing plaintiff at the deposition asked for copies of the value conclusions. It is not known whether he followed this verbal request with a formal discovery *501 request to Lindenwold or whether Renwick was served with a subpoena for the information. No motions were made to compel production of the value conclusions.

 As noted in Chadwick 99 Associates v. Director, Division of Taxation, supra, 23 N.J.Tax at 397, two of the original thirteen plaintiffs had their assessments reduced as a consequence of the compliance plan. Those two complaints were previously dismissed for failure to state a claim. Id. at 419. It is not known whether there was an increase or decrease in the assessments of the twelve apartment properties for which complaints were not filed in connection with this action.