789 A.2d 655 (2002)
347 N.J. Super. 256
Marianne CENTORINO, Plaintiff-Appellant,
v.
TEWKSBURY TOWNSHIP, Defendant-Respondent.
Tewksbury Township, Plaintiff-Appellant,
v.
Marianne Centorino, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 26, 2001.
Decided December 27, 2001.
*656 Steven R. Irwin, West Orange, argued the cause for Marianne Centorino (Mandelbaum & Mandelbaum, attorneys; Mr. Irwin, on the brief).
Judith A. Kopen, Clinton, argued the cause for Tewksbury Township (Gebhardt & Kiefer, attorneys; Arthur D. Fialk, Bridgewater, on the brief).
Before Judges PETRELLA, KESTIN and ALLEY.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
These consolidated appeals implicate the applicability and scope of the Supreme Court's decision in West Milford v. Van Decker, 120 N.J. 354, 576 A.2d 881 (1990). The homeowner, Marianne Centorino, challenged her 1998 and 1999 assessment increases on the grounds that they were based on her recent purchase of the property and therefore were unconstitutional spot assessments under the "welcome stranger" practice. Centorino was unsuccessful before the Hunterdon County Board of Taxation (County Tax Board) as to her 1998 assessment on procedural grounds, but prevailed on her 1999 appeal which the County Tax Board found was based solely on its sale price. Centorino sought separate relief in the Tax Court on the merits of the 1998 assessment, but that assessment was sustained. Tewksbury Township appealed the County Tax Board's rejection of the 1999 increased assessment and reinstatement of the pre-1998 assessment. The Tax Court reversed the County Tax Board and reinstated the 1999 increased assessment. Centorino then appealed the two separate adverse determinations, and those appeals are now consolidated. For the reasons hereafter stated we reverse in both appeals.
Centorino owns property at 102 Old Driftway Lane, Tewksbury Township, Hunterdon County, which she purchased on September 26, 1997. At that time, the assessed value of the property for property tax purposes was $492,100.
In late September or early October 1997, Tewksbury's tax assessor received a copy of the deed abstract informing him of the sale and the sale price of the property. The computer program he used indicated that the assessment to sales ratio fell under 85%[1] because it had been assessed at $492,100 and was sold for $730,000, yielding a ratio of 67.41%. The assessor considered this unusual because most other sales in the township fell within an 85% to 100% ratio. The assessor claimed that the larger discrepancy must have been due to an error in the then current property valuation.
The assessor reviewed the property's prior assessment, consulted the selling brokers, and viewed the exterior of the property while driving past it. The assessor said that he also relied on sales of comparable properties. He testified that he consulted the MLS listing, as well as the property record card for Centorino's property. Interestingly, however, the assessor said that the original property record *657 card was lost so it is not at all clear when or how he reviewed that property record card before this revaluation. In any event, it is undisputed that he prepared a new property record card before the Tax Court trial. That card noted that the property was "typical" of other properties in the neighborhood. Through his investigation, the assessor concluded that the property had been undervalued and testified that the underevaluation resulted from the fact that somehow the property was wrongfully listed as a "class 18 residence" rather than a "class 20 residence."[2] At trial, he testified that a class 18 residence was a lower class of property that lacked many of the amenities that this house possessed. He noted a three car garage, a security system, central vacuuming, an intercom system, a Jacuzzi, three and a half bathrooms, an outdoor deck and a fireplace. There was no indication of how common such items were in the taxing district.
The assessor set the assessment at $601,900 for the 1998 tax year.[3] Centorino filed an appeal of her 1998 tax assessment to the County Tax Board. The petition was dismissed by the County Tax Board as out of time, but that decision was reversed by the Tax Court in Centorino v. Tewksbury Tp., 18 N.J. Tax 303 (Tax Ct. 1999), which held that she was not out of time because the mandatory notice of assessment was wrongfully addressed to her predecessor in title. There was no appeal of that decision. In the meantime, Centorino filed a separate complaint in the Tax Court challenging the 1998 assessment. That case was eventually tried in the Tax Court along with the challenge to the 1999 assessment.
While that matter was pending in the Tax Court, Centorino filed an appeal with the County Tax Board challenging the 1999 assessment, which was also $601,900. The County Tax Board ruled that the increased 1999 assessment was improperly predicated upon the property's sale price, and reduced the assessment to $492,100, what it had been at the time of the purchase. The township appealed the County Tax Board's judgment on the 1999 assessment reduction to the Tax Court. The *658 appeal of Centorino filed in the Tax Court with respect to the 1998 assessment and Tewksbury's appeal of the 1999 reduction of the assessment by the County Tax Board were consolidated.
Two weeks before the trial in the Tax Court beginning on April 14, 2000, the assessor amended his 1999 appraisal after inspecting the inside of the subject property for the first time. The appraiser then asserted that the property should have been assessed at $668,000. However, Tewksbury conceded at trial that the original assessment of $601,900 was a cap on the amount that could be found by the Tax Court.
The Tax Court heard the trial of both the 1998 and 1999 tax appeals together. It upheld the 1998 increased assessment, but reversed the reduction of the 1999 assessment. The court concluded that although the reassessment for 1998/1999 "would not have occurred but for the deed ... [t]he taxpayer does not present any evidence to show that the assessor singled out the sales for reassessment [or that] the assessment of $601,900 was in any way related to the sales price." Instead, the court ruled that the assessment was based upon the physical characteristics of the property, as well as the realization of a mischaracterization of the property as an "18" rather than a "20" construction class. In upholding the increased assessments, the court reasoned that the assessor "did not utilize the sales price in any way to set the assessment of the subject property and did not single out this property ... [for an] increase... solely because it was sold." Essentially, the judge accepted Tewksbury's contention that a correction of a mistaken class category meant that there was no impermissible spot assessment, even though the sale brought the property to the assessor's attention. It argued that the receipt of the deed abstract served only to alert the assessor to an impropriety that had existed in the tax assessment.
If we accepted such a contention, Van Decker could be relegated to a premature grave merely because a tax assessor came up with an excuse to "correct" a claimed subjective mistake. For reasons discussed hereafter, we adhere to the view that Van Decker retains its full vitality and what occurred here was an obvious attempt to circumvent the established law.

I.
On appeal to this court, the taxpayer argues that the Tax Court Judge erred as a matter of law in not vacating the 1998 and 1999 spot assessments by the tax assessor. She also argues that the Tewksbury Township tax assessor utilized improper assessment maintenance techniques which violated the law. Finally, she argues that Tewksbury failed to present common level proof and the Tax Court Judge should have upheld the County Tax Board reduction for 1999 and applied that judgment to 1998.
Spot assessments violate the uniformity provision of the New Jersey Constitution, which requires that all property be assessed under general and uniform rules "according to the same standard of value." N.J. Const. art. VIII, § 1(1). In addition, spot assessments violate the equal protection clause of the Fourteenth Amendment because they discriminate among individuals of the same class. Baldwin Constr. Co. v. Essex County Bd. of Taxation, 16 N.J. 329, 341, 108 A.2d 598 (1954); U.S. Const. amend. XIV.
We detect from the tenor of various Tax Court opinions, including Corrado v. Tp. of Montclair, 18 N.J. Tax 200 (Tax Ct. 1999), some reluctance to apply Van Decker, and a strained effort to narrow its holding. Cf. Reinauer Realty Corp. v. Paramus, 34 *659 N.J. 406, 415, 169 A.2d 814 (1961) ("Trial judges are privileged to disagree with the pronouncements of appellate courts; the privilege does not extend to non-compliance.") Corrado appears to have grudgingly Cited Van Decker and improperly tried to limit it to its specific facts and as an anomaly.[4] That reading is too narrow. Corrado could also be distinguished, at least in part, on the ground that its upholding of the assessor's action in raising the assessment was based upon amounts due to added assessments for additions and improvements to the property, some of which had not been either undertaken with a permit or reported, although we are unable to discern from the record whether those items equaled or approached the amount by which the assessment was increased after the sale of the property. In addition, although we would not give credence or evidential value to apocryphal anecdotes as a basis for decisional law, and do not do so here, we are aware of reports that some tax assessors have not paid, or are unwilling to pay, proper attention to the principles of Van Decker.
Tax Court cases subsequent to Van Decker have attempted to put a spin on that case by applying a limited interpretation of what constitutes a spot assessment. They do so by attempting to find exceptions and distinctions and to limit such discrimination claims solely to the "welcome stranger" situation in which "there is a reassessment of recently sold property based solely on its sales price, without reassessing similar but unsold properties." Regent Care Center, Inc. v. Hackensack, 19 N.J. Tax 455, 458 (Tax Ct. 2001), discussing Township of West Milford v. Van Decker, 235 N.J.Super. 1, 561 A.2d 607 (App.Div.), aff'd, 120 N.J. 354, 576 A.2d 881 (1990).
Van Decker, supra, 120 N.J. 354, 576 A.2d 881, scrutinized the practice of assessing only recently sold properties without appraising similar properties in the same class that were not the subject of sale. There, the tax assessor had increased the assessment of the taxpayer's property as a result of its recent sale price multiplied by a ratio. Id. at 357, 576 A.2d 881. Our Supreme Court, speaking through Justice Garibaldi, held that "under no circumstances can appraised valuation of property be increased merely because it has been sold" and that the municipality's assessments were, therefore, unconstitutional under both the federal and state constitutions. Id. at 362, 576 A.2d 881.
In the case at bar, the assessor claimed that he did not reassess the property based solely upon the recent sale of the property. Instead, he argued that the increased assessment was the result of the property being wrongfully classified as a "class 18" residence, rather than a "class 20" home. However, when asked to distinguish between these types of properties, the assessor responded:

*660 They're so vague that II really couldn't. Itit calls for higher quality as a 20 andand less quality to 16. But there's an awful lot of overlapping withinwithin the descriptions.
He said the reassessment was based upon an alleged error in the property characterization as a "class 18" rather than a "class 20." However, when asked for an explanation of the differences in the two classes, the appraiser also conceded that there "... are no true guidelines from ... the state. Their guidelines as to what distinguishes a 17 from an 18 from a 19 are really sort of vague."
As indicated by the assessor, the differences between classes 18 to 20 are vague, except that class 20 is referred to as a "mansion." See note 2, supra. We could take note of increased prices and sizes of homes in recent time periods and the inflationary effects on real estate, but this has little effect on what is considered a mansion. It has been said that "a man's house is his castle,"[5] but objectively that does not make it a mansion. Where the assessor's appraisals of the differences between these classes was so obviously subjective and discretionary, and not readily discernable, the tax assessor must establish additional objective proofs as to the property in question, and in relation to other properties in the neighborhood, in order to rebut the presumption of validity of the 1999 County Tax Board judgment and to justify his statement that the subject property was not singled out solely on the basis of its sale. No such proof exists in the record. Moreover, such a "drive by inspection" would ordinarily raise eyebrows on a claimed mistake of class 18 instead of class 20. Although we do not decide this appeal on credibility, we do note that the assessor admitted that his subsequent inspection of the property, and presumably his change of opinion of the appropriate class number, was triggered solely by the property's low assessment to sales ratio. This also does not enhance Tewksbury's position that the sale price played no part in the assessor's decision to reassess. It appears that what occurred here was that the assessor really reassessed the Centorino property and singled it out[6] for such treatment because of its sale price.
In concluding that the taxpayer did not present evidence that the reassessment would not have occurred but for the deed abstract, the Tax Court erred. The judgment of the County Tax Board for 1999 reflected that the basis for the assessment was the sale price, and there was ample evidence of this in the record, including statements of the tax assessor who conceded that the impetus for his action was the sale price as shown on the deed abstract. We note that in the usual case there is a presumption of correctness of the County Tax Board's judgment. Pantasote Co. v. City of Passaic, 100 N.J. 408, 412-413, 495 A.2d 1308 (1985); Van Decker, supra, 235 N.J.Super. at 15, 561 A.2d 607. That does not appear to have been taken into account here.
Tewksbury relies on Corrado, supra, 18 N.J. Tax 200, where, as noted, the taxpayers appealed the assessments of three recently sold properties. In that case, the Tax Court assumed for purposes of the summary judgment motions, id. at 203-205, that the increases were based upon administrative adjustments due to discrepancies in their actual characteristics because *661 of improvements made, some without a permit, when compared with their descriptions on the respective property record cards, as well as other reasons unrelated to their sales.
In contrast, in the present case, the assessor did not rely on any legitimate non-sales related justifications, such as additions to the property or the like, for the increase. Nor were there any discrepancies in the property descriptions on record when compared with the actual properties. Id. at 203-204. Rather, Tewksbury merely argues that the property was wrongfully classifieda decision made only after the property was actually sold and in the absence of the original property record card. Reason would indicate that such an assessment decision was suspect. Here, the deficiencies cited render the findings of the Tax Court unsupportable. See Formosa v. Equitable Life Ins. Co., 166 N.J.Super. 8, 20, 398 A.2d 1301 (App.Div.1979) (findings are so wide of the mark that a mistake must have been made).
While Van Decker acknowledged that assessment maintenance may be appropriate in limited circumstances, we need not address the implications of the broader issue here. Suffice it to note that the appropriate maintenance instances referred to in Van Decker involved specific situations and objective criteria relating to the constitutional underpinnings of required uniformity in assessments. The court set forth the following situations in which such action is acceptable:
A municipality may revise assessments in years other than years of municipalwide revaluation for legitimate reasons. See, e.g., Handbook for New Jersey Assessors, New Jersey State Div. of Taxation (1989) sec. 902.2 (increased property value based on new improvements), sec. 902.3 (addition of formerly-exempt property); and sec. 903.3 quoted at 361; Schwam v. Township of Cedar Grove, 228 N.J.Super. 522, 550 A.2d 502 (App. Div.1988), certif. denied, 115 N.J. 76, 556 A.2d 1219 (1989) (reassessment of apartments converted to condominiums); Frieman v. Randolph Township, 216 N.J.Super. 507, 524 A.2d 453 (App.Div. 1987), certif. granted, 108 N.J. 665, 532 A.2d 242 (1987), appeal dismissed, 110 N.J. 294, 540 A.2d 1276 (1988) (reassessment of all apartment complexes in township based on adoption of vacancy decontrol ordinance, and reassessment of all industrial and commercial properties based on study showing that they were underassessed as a class).

[Van Decker, supra, 120 N.J. at 362, 576 A.2d 881.]
However, Van Decker emphatically cautioned that "under no circumstances can appraised valuation of property be increased merely because it has been sold." Van Decker, supra, 120 N.J. at 362, 576 A.2d 881. In this case, Tewksbury presented an insufficient basis as a matter of law to overcome the 1999 determination of the County Tax Board that the increase was based solely upon the sale of the home.[7] Clearly, the same reasoning would also apply to the earlier 1998 assessment which the County Tax Board did not address on the merits. Accordingly, the decision of the Tax Court must be reversed.
*662 Because this case presents a clear example of spot assessment discrimination, as in Van Decker, we need not consider the further contentions regarding the existence of a common level under Chapter 123. Van Decker, supra, 120 N.J. at 365, 576 A.2d 881.
For the aforementioned reasons, the decision of the Tax Court with respect to the 1998 and 1999 assessments are reversed and the matter is remanded for the entry of judgment assessing the properties for those years at the amounts assessed just prior to plaintiff's purchase.
NOTES
[1] The assessment to sales ratio is arrived at by dividing the assessment by the sale price.
[2] The Real Property Appraisal Manual for New Jersey Assessor (Vol. II) (3d ed.1990), describes various classes applicable to singlefamily residences which we list for informational purposes:

Class 12: "Single Family Residence-Poor Quality Materials and Workmanship";
Class 13: "Single Family Residence-Low Quality Materials and Workmanship";
Class 14: "Single Family Residence-Fair Quality Materials and Workmanship";
Class 15: "Single Family Residence-Below Average Quality Materials and Workmanship";
Class 16: "Single Family Residence-Average Quality Materials and Workmanship";
Class 17: "Single Family Residence-Above Average Quality Materials and Workmanship";
Class 18: "Single Family Residence-Good Quality Materials and Workmanship";
Class 19: "Single Family Residence-High Quality Materials and Workmanship"; and
Class 20: "Single Family Residence-Mansion Quality."
[3] The Lawyers Diary for each of the respective years lists Tewksbury's tax information in 1999 and 2000 as follows:

For 1998, the "tax rate" was $2.05 per hundred dollars of assessment and the "average ratio" (of assessed to true value) was 95.50%.
For 1999, the "tax rate" was $2.11 per hundred and the "average ratio" was 91.27%.
The common level range for each year would have been plus or minus 15% of the average ratio. The assessor's 1998 increase of the assessment from $492,100 to $601,900 would appear to approximate the low end of the range based on the $730,000 purchase price, perhaps adjusted for the month of sale. However, we need not go into detail as to the Chapter 123 corridors.
[4] Corrado seems to rely on the lack of reported opinions after Van Decker on the issue of spot assessments, and also on a subsequent opinion dealing with an added assessment. 18 N.J. Tax at 202. A lack of reported cases is not a basis for disregarding a constitutional imperative or diluting those principles in Van Decker. A problem with reliance on lack of reported opinions is that not all of such cases are reported. Thus, there is no way of presently determining the number of unreported cases that may have addressed the issue. Of course, where tax assessors and county tax boards correctly apply Van Decker there should generally be no necessity for an appeal. Also, there is no way of knowing how often some tax assessors, in their zeal to maintain assessment records, may single out properties for increased assessment based on current sale prices, or even whether a property owner is aware of property tax law and the impropriety of such a selective increased assessment. On the other hand, we doubt that any assessment would be lowered as quickly if its recent sale price was less than the assessed value.
[5] Edward Coke, The Institutions of the Laws of England, vol. 1, 1628-1641.
[6] This is not to say that line items involving other properties might not have received similar treatment.
[7] We are aware that the Legislature has amended N.J.S.A. 54:4-23, which involves the assessor's duty to keep assessments updated. However, this must be done either by revaluation of tax districts or in the situations contemplated in Van Decker, supra, 120 N.J. at 362, 576 A.2d 881. This amendment, effective June 14, 2001, does not appear to apply retroactively, and thus would be inapplicable here where the assessments were made prior to the effective date, nor could it change the constitutional principles enunciated in Van Decker.