PER CURIAM.
In this appeal, property owner John J. Brunetti claims error in a determination by Judge Joseph C. Small, following a testimonial hearing, that the reassessment of his property for tax purposes did not constitute an unconstitutional spot assessment. The reassessment at issue occurred in 1999, after a contract for sale of the property had been executed but before sale had taken place. It raised the assessed value of the property from $1,540,000 to $4,203,000, an amount that was roughly equivalent to the contract sales price.
In reaching his decision, Judge Small found ample evidence in the record to support the taxing authority’s position that a spot assessment had not occurred, but, instead, the reassessment was triggered by three acts on the assessor’s part: (1) his determination to investigate the basis for the continued yearly rejection by *82 the taxing authority of applications by Brunetti for a lowered assessment pursuant the Farmland Assessment Act of 1964, N.J.S.A. 54.4-23.1 to -23.22, and Brunetti’s seeming acquiescence in the authority’s action;[1] (2) his decision to actually inspect the property; and (3) his discovery that the property was not used for farmland activity and did not contain undevelopable wetlands, as existing property records stated that it did. These acts, Judge Small held, constituted an independent course of conduct sufficient to remove the reassessment from the proscription of spot assessments contained in Township of West Milford v. Van Decker, 235 N.J.Super. 1, 561 A.2d 607 (App.Div.1989), aff'd, 120 N.J. 354, 360-64, 576 A.2d 881 (1990).
We find that Judge Small’s conclusions were based upon substantial credible evidence provided through the testimony of Cherry Hill tax assessor Thomas G. Glock, and we therefore affirm. Alpine Country Club v. Borough of Demarest, 354 N.J.Super. 387, 390, 807 A.2d 257 (App.Div.2002); Glenpointe Assoc. v. Township of Teaneck, 241 N.J.Super. 37, 46, 574 A.2d 459 (App.Div.), certif. denied, 122 N.J. 391, 585 A.2d 392 (1990).
The property in question consisted of 37.69 undeveloped acres, located on Lenape Road in Cherry Hill and situated across from the Cherry Hill Mall. It was split zoned for residential and commercial uses, with a frontage area zoned commercial and approximately 31 acres zoned high-density residential. Commencing in 1990, efforts had been made to develop the property primarily for residential use. However, strong public resistance had been encountered. In 1997, an entity known as MCW Enterprises, L.L.C. contracted for the purchase of the property, subject to obtaining necessary development approvals, agreeing to pay a purchase price of $4,325,000. After various revisions to its development plans, on August 3, 2000, preliminary and final major site plan approvals for a revised compromise residential development *83 plan were issued by the Township of Cherry Hill Planning Board, and sale of the property closed in November 2000. Evidence at trial does not establish whether or not Glock was aware of the pending sale at the time of revaluation.
Glock had commenced his tenure as Cherry Hill’s tax assessor in 1993. From that time until a reassessment as of October 1, 1999 for the tax year 2000, the property in question had been valued for tax purposes at $1,540,000. In each of the years that Glock served as tax assessor, Brunetti, the property owner, had sought a lowered tax assessment pursuant to the Farmland Assessment Act. Each year, his application was denied. However, no appeals from the denials were ever taken. Prior to 1999, Glock had inspected the property only from the road. He testified that, in 1999, as the result of the filing by Brunetti of yet another application under the Farmland Assessment Act, he determined that a closer inspection of the property was warranted. He therefore walked the property and confirmed that no farming activity existed there.[2] Further, he determined that the property did not conform to its description on the relevant property record card, since that card described wetlands that did not exist on the property. A reassessment followed.[3]
Glock testified additionally that approximately eight other properties were the subject of Farmland Assessment Act applications; that he could not recall closely inspecting any of the others in 1999; and that he could not recall reassessing any of the other properties during that year.
A concise summary of the law applicable to spot assessments appears in Judge Small’s decision in Corrado v. Township of Montclair, 18 N.J.Tax 200, 202 (1999), as follows:
*84 A prohibited spot assessment is the reassessment of a recently sold property based solely on its sales price when other properties which did not sell are not reassessed. It is sometimes informally referred to as a “Welcome, Stranger” system of tax assessment, West Milford Township v. Van Decker, 120 N.J. 354, 361, 576 A.2d 881[, 885] (1990) and violates the uniformity provisions of our State Constitution, N.J. Const. art. VIII, § 1, ¶ 1. See also Allegheny Pittsburgh Coal Co. v. County Commission, 488 U.S. 335 [336], 109 S.Ct 633, 102 L.Ed.2d 688 (1989). Property tax assessments may be revised for less than all properties without a complete revaluation. Van Decker, supra, 235 N.J.Super. at 10, 561 A.2d 607[, 611]; 120 N.J. at 362, 576 A.2d 881[, 885] Calton Homes v. West Windsor Tp., 15 N.J.Tax 231, 252 (Tax 1995). For example, Section 902.2 of the Handbook for New Jersey Assessors, instructs assessors to reassess property when there have been improvements. Local Property and Public Utility Branch, Division of Taxation— Department of the Treasury, State of New Jersey, Handbook for New Jersey Assessor § 902.2 (1989) N.J.S.A. 54:4-23 imposes a duty upon the assessor to review assessments annually and to revise them in light of changed valuation factors affecting individual properties. Quinn v. Jersey City, 9 N.J.Tax 128, 133-34 (Tax 1987), overruled on other grounds by West Milford Tp. v. Van Decker, 235 N.J.Super. 1, 22, 561 A.2d 607[, 618] (App.Div.1989), aff'd 120 N.J. 354, 576 A.2d 881 (1990). It is also important to note that spot assessment determinations are fact-sensitive.
[Ibid]
In Van Decker, reassessments based solely upon the fact of property sale were held to be unconstitutional. 235 N.J.Super. at 12, 561 A.2d at 612; 120 N.J. at 365-66, 576 A.2d at 886-87. By contrast, in Corrado, focus by the tax assessor upon properties that were listed for sale was held not to be a precursor to an unconstitutional spot assessment, so long as the assessment itself was based upon independent non-sales-related considerations; in that case, the discovery by the assessor through review of descriptions of real estate in sales listings that unknown property improvements had occurred that were not reflected on the relevant property record cards.
In reaching its conclusion, the Corrado court conceded that “the likelihood of being identified for possible reassessment appears to have been greater for these houses than it would have been for houses that were not listed for sale.” Corrado, supra, 18 N.J.Tax at 205. However, the court justified the practice of utilizing real estate listings as a triggering event for closer scrutiny by the tax assessor by noting that “assessors do have a duty to keep tax rolls current.” Id. at 206 (citing Van Decker, supra, 120 N.J. at 368, *85 576 A.2d at 888 (concurring opinion of Pollock, J.)). It would be inappropriate, the court held, for a tax assessor to ignore current information that came into his hands. Ibid.
We have recently criticized as unduly narrow the construction accorded to the holding in Van Decker by the Tax Court in Corrado and other cases, and that court’s application of the precedent only to “welcome stranger” situations. See, Centorino v. Tewksbury Tp., 347 N.J.Super. 256, 262-64, 789 A.2d 655 (App.Div.2001), certif. denied sub nom Tewksbury Tp. v. Centori-no, 172 N.J. 175, 796 A.2d 892 (2002). We did not, however, implicitly overrule the holding in Corrado, finding that it could be distinguished from Van Decker “on the ground that its upholding of the assessor’s action in raising the assessment was based upon amounts due to added assessments for additions and improvements to the property, some of which had not been either undertaken with a permit or reported, although we are unable to discern from the record whether those items equaled or approached the amount by which the assessment was increased after the sale of the property.” Centorino, supra, 347 N.J.Super. at 263, 789 A.2d at 659.
In Centorino, we found unconstitutional a residential home reassessment following sale, triggered by a low assessment to sales price ratio, that was allegedly based upon a miscategorization of the property as a “class 18” residence, rather than a “class 20” home, when the assessor could not prove the implementation of the initial categorization and could not articulate a meaningful distinction between the two categories. Id. at 264-65, 789 A.2d at 659-60. We stated: “Where the assessor’s appraisals of the differences between these classes was so obviously subjective and discretionary, and not readily discernable, the tax assessor must establish additional objective proofs as to the property in question, and in relation to other properties in the neighborhood, in order to rebut the presumption of validity of the 1999 County Tax Board judgment [finding the assessment improper] and to justify his statement that the subject property was not singled out solely on *86 the basis of its sale.” Id. at 265, 789 A.2d at 660.[4]
In the present ease, there is no evidence that Cherry Hill’s assessor, Gloek, had knowledge of the impending sale of the Brunetti property or the contract sales price. Indeed, the evidence at trial, accepted by Judge Small, fully supports his conclusion that an adequate independent basis for the reassessment arose as the result of Glock’s determination to investigate Brunet-ti’s inexplicable acquiescence in the yearly denials of his Farmland Assessment applications. However, even if Gloek were aware of the pending sale, his determination to reassess the Brunetti property is fully supported by the discovery that it did not contain the wetlands that had served to depress its valuation previously. Moreover, unlike the illusory distinctions between classes of property that formed the basis for reassessment in Centorino, it is clear in this case that the nonexistence of claimed wetlands was a distinct and definable factor that could significantly affect property value for tax purposes. We note in this regard that Brunetti has not disputed the fact that the presence of wetlands was set forth on the property record card, the fact that no such wetlands existed, or the significance of wetlands to valuation.
We thus affirm Judge Small’s conclusion that the event precipitating reassessment in this case was not the fact of projected sale, but rather an investigation of a course of seemingly illegal conduct of Brunetti, himself.
Brunetti argues that, despite this conclusion, the revaluation of his property constituted an unconstitutional spot assessment because other vacant land was not simultaneously subjected to revaluation. However, Brunetti has offered no support for his position that an assessor must ignore facts demonstrating the need to reassess a single piece of property if all property in the municipality cannot be simultaneously reexamined. Indeed, as the *87 court recognized in Corrado, supra, 18 N.J.Tax at 202, case law holds otherwise. See, e.g., Tri-Terminal Corp. v. Borough of Edgewater, 68 N.J. 405, 413-14, 346 A.2d 396 (1975), cert. denied, 425 U.S. 958, 96 S.Ct. 1739, 48 L.Ed.2d 203 (1976) (assessors should be alert to changed valuation factors peculiarly affecting individual properties in years between revaluations); Quinn v. Jersey City, 9 N.J.Tax 128, 134 (Tax Ct.1987), overruled on other gr. by Van Decker, supra, 235 N.J.Super. at 22, 561 A.2d 607 (“[T]he assessor is not precluded from compliance with the statutory mandate of N.J.S.A. 54:4-23 merely because all properties in the taxing district cannot be revalued and reassessed in one year”); Frieman v. Randolph Tp. 8 N.J.Tax 264, 274 (Tax Ct.1986), aff'd, 216 N.J.Super. 507, 524 A.2d 453 (App.Div.1987), certif. granted, 108 N.J. 665, 532 A.2d 242 (1987), appeal dismissed, 110 N.J. 294, 540 A.2d 1276 (1988) (“It is the duty of the assessor to revise the assessment to reflect [an obvious] change in value”).
Further, Brunetti ignores the fact that the genesis of the revaluation of his property was an investigation into his seemingly illegal course of conduct and the discovery of a misrepresentation as to the existence of wetlands on the property. He has offered no proof whatsoever that a similar course of conduct was undertaken by other property owners, or that the characteristics of their property were misstated for tax purposes. Speculation that those properties may be undervalued does nothing to enhance Brunetti’s claim. See Calton Homes v. West Windsor Tp. 15 N.J.Tax 231, 256 (Tax Ct.1995); Greenwald v. Metuchen, 1 N.J.Tax 228 (Tax Ct.1980). Thus we are left with an instance of assessment maintenance the legitimacy of which is fully supported by the evidence presented. We decline to speculate whether, on the basis of other, undisclosed facts, we would reach a different result. Cf. Centorino, supra, 347 N.J.Super. at 266, 789 A.2d at 660-61; Van Decker, supra, 235 N.J.Super. at 13-15, 561 A.2d at 613-14.
Affirmed.

 Applications for the tax years 1997 through 2000 list 17.40 acres out of 35.67 as “cropland pastured" with 18.27 acres as “appurtenant woodland or wetland." The applications additionally indicated that the land was "farmed solely by owner.”

 This determination is relevant for background purposes only, since the property was never valued as farmland.

 On appeal, Brunetti has not challenged the amount of the new assessment, which reflects the sale price of equivalent properties as described in the testimony of Cherry Hill’s valuation expert, appraiser Harry F. Renwick, Jr.

 No presumption of validity arises here from the Board’s action, since the parties waived a hearing before the County Tax Board, and its memorandum of judgment upholding the reassessment was entered "without prejudice" as the result of the parties’ "intent of directly appealing the County findings to the Tax Court."