KUSKIN, J.T.C.
In these local property tax matters, plaintiff contends that the $53,000,000 assessment on its apartment complex for each of tax years 2001 and 2002 constituted a prohibited spot assessment because it was based solely on the purchase price of $63,175,000 paid by plaintiff in December 1998. Plaintiff does not challenge the amount of the assessment for either year, but seeks to have the assessment rolled back by almost $20,000,000 to the assessment for tax year 2000, $33,833,700. For the reasons discussed below, I conclude that the 2001 and 2002 assessments were not spot assessments, and, accordingly, I deny plaintiffs claim for relief.
Based on the testimony of defendant’s tax assessor, called by plaintiff as its only witness at trial (defendant called no witnesses), I make the following factual findings. For the tax years in issue, defendant had approximately 18,000 line items on its assessment list. Of those, approximately 16,000 were Class 2 properties.[1] Of the remainder, seven properties were apartment complexes, including the subject property which was identified as Block 701, Lot 1 on defendant’s Tax Map. Defendant conducted a municipal-wide revaluation for tax year 1992. The revaluation assessment on the subject property was a partial assessment of $29,620,000. The property record card prepared by the revaluation company *614 showed an estimated value for the completed complex exceeding $40,000,000 based on projected income and expenses.
The apartment complex was completed during 1992, and, for 1993, the first year of full assessment, the initial assessment proposed by defendant’s tax assessor was $38,049,900. The assessor was aware that the property had sold in June 1992 for $55,517,000. In investigating the sale, the assessor spoke with a representative from the purchaser of the property (the predecessor owner to plaintiff), who advised her that the sale was not at arms length, that the parties were related, and that the sale was accomplished for tax purposes. Based on this information, and representations by the representative as to the potential rental income from the then empty complex, the assessor agreed to reduce the 1993 assessment to $33,500,000. This assessment remained in place until tax year 1998, when it was increased by a $33,700 added assessment representing improvements to the gymnasium at the property.
On December 29, 1998, the property sold to plaintiff for a purchase price of $63,175,000. As of January 10, 1999, the date that defendant’s tax assessor was required to submit her 1999 assessment list to the Passaic County Board of Taxation, N.J.S.A. 54:4-35, she had not received a copy of the deed and, for tax year 1999, continued to assess the property at $33,533,700. The assessor learned of the sale before April 1, 1999. This triggered a review by her of the 1999 assessment on the property and the filing of an appeal for that year. For tax year 2000, the assessor carried over the 1999 assessment and again filed an appeal. The assessor had been authorized by the municipal governing body to decide what appeals should be filed.
Although the assessor regarded the appeals as mechanisms for increasing the assessments, she instituted the appeals primarily to obtain, through discovery, information as to the sale of the property and accurate income and expense information so that she could review the assessment on the property. She needed additional information because she had not received a complete response to any of the requests for .information she sent pursuant to N.J.S.A. *615 54:4-34 (“Chapter 91”). In 1995, she received, from plaintiff’s predecessor in title, a rent roll, but the property was not fully occupied. She did not receive income and expense information. In 1996, she received no response to her request. In 1997 and 1998, she received a rent roll, and income and expense information for six months, and an annual budget. Plaintiff responded to her 1999 Chapter 91 request by providing a rent roll but stating that an annual operating statement could not be furnished because plaintiff had owned the property for less than one year at the time of the response.
The assessor was unwilling to use the information she received as a basis for valuing the subject property on an income approach.[2] She was unable to use income and expense information from the other six apartment complexes in the Township for purposes of valuing the subject property because the allocation of expenses between landlord and tenant was significantly different in those complexes from the allocation in the subject complex. At the subject complex tenants had a much higher expense obligation than in the other apartment complexes. If the assessor had used an income approach based on extrapolations from the information provided to her for the subject complex, the value indicated would have been in excess of $50,000,000.
On February 1, 1999, the assessor sent a memorandum to defendant’s Mayor and Council advising them that she had instructed defendant’s attorneys to file an appeal to increase the assessment on the subject property and another property. In the memorandum she stated: “This procedure bypasses the ^welcome stranger’ format where an assessor arbitrarily increases an assessment due to the sale. Our contention is that the market value has increased tremendously either by approvals or increases in the income stream. We may not be able to achieve the deed price, but I am confident that we will get a substantial increase regard *616 less.” In response to an inquiry from a member of the Council as to why the assessment on the subject property was much lower than the sale price, the assessor, in a memorandum dated March 12,1999, described the subject property as “unique” and indicated that appeals were filed “to allow us to serve interrogatories on the property owner [] to gain rent rolls for [the subject property]....”
Although the assessor had not changed the assessment on the subject property between 1993 and 2001 (except for the $33,700 added assessment in 1998), she had revised the assessments on four of the apartment complexes in the Township for tax year 2000, as part of the revision of 1182 assessments (including 77 Class 4 properties), and revised the assessment on a fifth complex for tax year 2001, as part of the revision of 5447 assessments (including 144 Class 4 properties). The percentage change between the tax year 2000 and tax year 2001 assessments on the subject property was substantially greater than the percentage change in the assessments on the other apartment complexes for tax year 2000 or 2001.
In August 2000, the assessor participated in a settlement conference relating to defendant’s appeals for tax years 1999 and 2000 relating to the subject property. At the conference she received a rent roll and actual annual income and expense information. Based on that information, she, in collaboration with the appraiser for the municipality, determined an income approach value for the property and made a settlement proposal with respect to the 1999 and 2000 appeals and the 2001 assessment. Plaintiff did not accept the proposal, and, at a later date, the assessor caused the 1999 and 2000 appeals to be withdrawn.
The assessor testified that the increase in assessment which she placed on the subject property for tax year 2001 was not based on the sale price, but was the result of the income approach-she and the appraiser for the municipality developed at the August 2000 settlement conference. For tax year 2002, she carried over the 2001 assessment.
*617 Based on the preceding facts, plaintiff contends that, in reality, the sole basis for the increase in the assessment on the subject property for tax year 2001 was the sale which took place on December 29, 1998. Plaintiff asserts that: 1) the assessor admitted the role of the sale in causing her to review the assessment, and 2) her failure to increase the assessment in years preceding the sale, based on income and expense information provided to her by the prior owner, confirms that the sale alone resulted in the assessment increase.
Defendant responds that, although the sale stimulated the assessor to review the tax assessment on the subject property, the sale played no role in determining the amount of the 2001 assessment. Defendant contends that the assessment resulted from an analysis of the income and expenses for the subject property as contained in the information provided to the assessor at the August 2000 settlement conference. In addition, defendant asserts that the assessor’s revision of the assessments on other apartment complexes for tax years 2000 (four complexes) and 2001 (one complex) demonstrates that the subject property was not singled out for spot assessment in 2001.
West Milford Tp. v. Van Decker, 120 N.J. 354, 576 A.2d 881 (1990) contains our Supreme Court’s most recent statement of the law applicable to spot assessments. The tax assessor in West Milford increased the assessments of residential properties which had sold but did not revise the assessments on residential properties which had not sold. The Court held that this practice constituted unconstitutional intentional discrimination.
By singling out for reassessment only that small group of taxpayers who purchased homes in 1984 while leaving undisturbed the assessments of other property in the class, West Milford deviated from the well-established assessment policy of the State. Such spot assessments known as the “welcome stranger” pattern, are commonly recognized as intentional discriminatory practices.
Such spot assessments violate the New Jersey Constitution’s uniformity clause. We note that it is arbitrary intentional discrimination that is unconstitutional. A municipality may revise assessments in years other than years of a municipal-wide revaluatmn for legitimate reasons .... However, under no circumstances can appraised valuation of property be increased merely because it has been sold.
*618 [Id. at 361-62, 576 A.2d at 884-85 (citations omitted) (emphasis added).]
After concluding that the “welcome stranger” practice also violated the equal protection clause of the Fourteenth Amendment of United States Constitution, the Court stated:
Accordingly, the Township practice of increasing the assessed value only of homes purchased in the Township in 1984 and leaving the value of other homes undisturbed constitutes spot assessment in violation of the federal and state constitutions.
[Id. at 364, 576 A.2d at 886.]
Van Decker sets forth two criteria for a prohibited spot assessment: 1) the assessment is based solely on a sale of the property, and 2) the assessments on other properties in the same class are not revised. Two recent Appellate Division decisions indicate that, whether or not the assessor revises assessments of other properties in the same class, a spot assessment exists only if it is based solely on a sale price without any other independent basis. In Centorino v. Tewksbury Tp., 347 N.J.Super. 256, 789 A.2d 655 (App.Div.2001), the court condemned, as unconstitutional spot assessments, assessments placed on a residential property for tax years 1998 and 1999. The taxpayer had purchased the property in September or October 1997. The assessor claimed that, as a result of the sale, he reviewed the property’s prior assessment and the property record card, consulted the multiple listing service listing for the property, conducted a drive-by inspection, and concluded that the property had been undervalued as a result of being categorized as a Class 18 Residence rather than a Class 20 Residence. However, the assessor’s testimony revealed that he had lost the property record card before changing the assessment on the property, and, therefore, the veracity of his testimony that he reviewed the assessment was brought into question. Furthermore, the assessor could not adequately explain the difference between a Class 18 and Class 20 property. Id. at 264, 789 A.2d at 659-60. After considering the assessor’s testimony, the Appellate Division concluded as follows:
Where the assessor’s appraisals of the differences between these classes was so obviously subjective and discretionary, and not readily discernable, the tax assessor must establish additional objective proofs as to the property in question, and in relation to other properties in the neighborhood, in order to rebut the presumption *619 of validity of the 1999 County Tax Board judgment and to justify his statement that the subject property was not singled out solely on the basis of its sale. No such proof exists in the record.... It appears that what occurred here was that the assessor really reassessed the Centorino property and singled it out for such treatment because of its sale price.
.. [T]he assessor did not rely on any legitimate non-sales related justifications, such as additions to the property or the like, for the increase. Nor were there any discrepancies in the property descriptions on the record when compared with the actual properties.
[Id. at 265-66, 789 A.2d at 660-61 (footnote omitted).]
In Brunetti v. Cherry Hill Tp., 21 N.J. Tax 80, 2002 WL 32139430 (App.Div.2002), certif. denied 175 N.J. 547, 816 A.2d 1049 (2003), the assessment on the taxpayer’s property was increased after a contract for sale had been signed, but before the sale had taken place. The increased assessment approximated the contract price. There, as here, the taxpayer contended that he was the victim of a spot assessment but did not challenge the amount of the assessment. The Appellate Division sustained the Tax Court’s ruling that the assessment was not an unconstitutional spot assessment under Van Decker or Centorino.
In the present case, there is no evidence that Cherry Hill’s assessor, Glock, had knowledge of the impending sale of the Brunetti property or the contract sales price. Indeed, the evidence at trial, accepted by Judge Small, fully supports his conclusion that an adequate independent basis for the reassessment arose as the result of Gloek’s determination to investigate Brunetti’s inexplicable acquiescence in the yearly denials of his Farmland Assessment applications. Howevgr, even if Glock were aware of the pending sale, his determination to reassess the Brunetti property is fully supported by the discovery that it did not contain the wetlands that served to depress its valuation previously. Moreover, unlike the illusory distinctions between classes of property that form the basis for reassessment in Centorino, it is clear in this case that the non-existence of claimed wetlands was a distinct and definable factor that could significantly affect property value for tax purposes.
[Id. at 86, 2002 WL 32139430 at *4.]
The court also noted that the taxpayer “has offered no support for his position that an assessor must ignore facts demonstrating the need to reassess a single piece of property if all property in the municipality cannot be simultaneously examined. Indeed, as the court recognized in Corrado v. Montclair Tp., 18 N.J.Tax 200, 202 (1999), case law holds otherwise.” Brunetti, supra, 21 N.J. Tax at *620 86-87, 2002 WL 32139430 at *4. In Corrado, the Montclair tax assessor reviewed the assessments on the three properties in issue as a result of their being listed for sale. The review disclosed improvements to the properties not reflected on the property record cards. The assessor increased the assessment on each property. The Tax Court found that “there were adequate non-sales related justifications for the assessor to have changed the property record cards and the assessments,” Corrado, supra at 204, and that the increases were based on “the changed physical characteristics of the properties.” Id. at 206. Consequently, the changes did not constitute spot assessments.
The Van Decker; Centorino and Brunetti decisions, when read together, hold that a prohibited spot assessment occurs only when the assessor has no basis for revising the assessment other than a sale of the property. An assessor may revise assessments for “legitimate reasons” independent of a sale even in the absence of a municipal-wide revaluation. West Milford Tp. v. Van Decker, supra, 120 N.J. at 362, 576 A.2d at 885. Here, there is no dispute that the sale of the subject property on December 29, 1998 triggered the assessor’s review of the assessment on the subject property. The assessor’s testimony demonstrates, however, that the assessment increase she placed on the property for tax years 2001 and 2002 was based on independent information provided to her in August 2000 during a settlement conference relating to the 1999 and 2000 appeals she caused to be filed. Before receipt of this information, the assessor never had received accurate actual full-year income and expense information for the subject property. She had received partial year figures, budgets, and rent rolls. From the rent rolls, she could have concluded what the potential rental income of the subject property was, but, in her view, she could not make an accurate analysis of the expenses.
If the other apartment complexes in the Township had been similar in their financial operations to that of the subject property, the assessor might have relied on income and expense information received from these other properties as a basis for valuing.the subject property. However, her undisputed testimony is that the *621 nature of the operation of the subject property, particularly the allocation of expenses between the landlord and tenants, was significantly different from all other apartment complexes in the Township. Accordingly, without actual information from the subject property, the assessor had no reliable basis for determining an assessable value under an income approach.
Once the assessor received accurate income and expense information for the subject property, she, in coordination with the appraiser retained by the defendant, developed an income valuation for the property which provided an independent basis for the assessment imposed for tax year 2001 and earned over to tax year 2002. On this basis alone, the assessments for 2001 and 2002 do not constitute prohibited spot assessments under Van Decker, Centorino and Brunetti.[3]
Plaintiff argues that the assessor had sufficient information to value the property, using an income approach, for tax years 1999 and 2000 and preceding years. Even if this is so, the assessor’s failure to use the information in assessing the subject property for those years does not demonstrate that, for tax years 2001 and 2002, she based the assessment solely on the December 29, 1998 sale price. Similarly, the assessor’s decision to withdraw the 1999 and 2000 appeals she caused to be filed does not demonstrate that the 2001 and 2002 assessments were based solely on the sale price. Cf. Hasbrouck Heights Bor. v. Division of Tax Appeals, 54 N.J.Super. 242, 248, 148 A.2d 643, 646 (App.Div.1959) (stating that property tax appeals for different years constitute separate causes of action). Accord Jepson Refrigeration Corp. v. Trenton, 15 N.J.Tax 467, 473 (1996), rev’d on other grounds, 16 N.J.Tax 457 (App.Div.1996). Even if the appeals represented an effort to *622 circumvent the Van Decker prohibition of the “welcome stranger” practice, neither the appeals nor their withdrawal establishes the basis for the 2001 and 2002 assessments. See Freehold Bor. v. WNY Props. L.P., 20 N.J.Tax 588 (Tax 2003) (discussing spot assessment decisions generally and holding that a municipality’s appeal of an assessment is not a spot assessment). I reject plaintiffs suggestion that the assessor engaged in a sinister scheme to circumvent the holding of Van Decker, culminating in the 2001 and 2002 assessments.
The assessor’s failure to increase the assessment on the subject property for earlier years, when she might have done so, does not preclude her from increasing the 2001 and 2002 assessments. See Brunetti v. Cherry Hill Tp., supra, 21 N.J.Tax at 85, 2002 WL 32139430 at *4 (sanctioning a factually supported reassessment of a single parcel of property). The assessor may have been remiss in failing to increase the subject property’s assessment before 2001. However, this does not provide a basis for invalidating a proper increase in assessment once imposed.
Spot assessment relief, by mandating a rollback, is extraordinary and should only be invoked in lieu of the exclusive remedy (prescribed by the [LJegislature in Chapter 123) when the assessor has acted illegitimately and unreasonably and not when he deviates from perfect practices.
[Shippee v. Brick Tp., 20 N.J.Tax 427, 436 (2002) (citations omitted); appeal docketed, Nos. A2538-02T3, A2539-02T3, A2542-02T3 (App.Div. Dec. 31, 2002).]
The revision to the assessment on the subject property was not an isolated event. It had been preceded by revisions to four apartment complex assessments in 2000 and one in 2001, as part of the revision of numerous other assessments for each of those years. The magnitude of the increase in the subject assessment as compared to the adjustments in the other apartment complex assessments does not vitiate the significance of the assessor’s review and revision of these other assessments. Thus, in a very real sense, the assessor did not leave undisturbed the assessments of other properties in the class. On this second basis, then, the assessment is not a prohibited spot assessment under Van Decker.
*623 Because I conclude that the assessor had an independent basis for increasing the 2001 and 2002 assessments on the subject property other than the December 29,1998 sale price, and because the revision of the assessment was part of a pattern of revisions to the assessments on all but one of the seven apartment complexes in the Township of Wayne, I conclude that the 2001 and 2002 assessments on the subject property are not spot assessments under Van Decker, Centorino, or Brunetti. Accordingly, judgment will be entered in favor of defendant affirming the assessments on the subject property for tax years 2001 and 2002.

For tax assessment purposes, N.J.A.C. 18:12-2.1 establishes property-type Classes 1, 2, 3, 4, 5, 6, and 15, with all but Classes 1 and 2 having sub-classes. Class 2 is defined as "Residential (4 families or less)” and Class 4 contains commercial, industrial, and apartment properties.

 The income approach is the preferred method for valuing income-producing property. Appraisal Institute, The Appraisal of Real Estate 471 (12th ed.2001); Parkview Village Assocs. v. Collingswood Bor., 62 N.J. 21, 23, 297 A.2d 842, 843 (1972).

 The 2001 assessment was not subject to the requirements imposed by L. 2001, c 101, § 1, which amended NJ S.A. 54:4-23 to require an assessor to obtain approval irom the county board of taxation and Division of Taxation before reassessing "part of a taxing district.” This amendment did not become effective until June 14, 2001, long after the October 1, 2000 assessment date for 2001. The assessor did not reassess the subject property for 2002, but merely carried over the 2001 assessment.