NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

## TAX COURT OF NEW JERSEY



**Mala Sundar**
 **JUDGE**

R.J. Hughes Justice Complex
P.O. Box 975
25 Market Street
Trenton, New Jersey 08625
Telephone (609) 815-2922
taxcourttrenton2@judiciary.state.nj.us

December 21, 2017

Frank E. Ferruggia, Esq.
McCarter & English, L.L.P.
100 Mulberry Street
Four Gateway Center
Newark, New Jersey 07102

Martin J. Buckley, Esq.
Dasti Murphy et al. P.C.
620 West Lacey Road, P.O. Box 1057
Forked River, New Jersey 08731

>  Re:    Del Rosso et al. v. Borough of Point Pleasant
>           Block 1, Lot 42
>           Docket No. 005775-2017

Dear Counsel:

This matter is before the court on plaintiffs' motion for summary judgment for an Order to vacate the 2017 assessment of $1,630,800 imposed by the assessor for defendant ("Borough") and roll it back to the assessment amount for 2016 ($1,250,000). Plaintiffs argue that this relief is required because the assessor increased the assessment for 2017 solely due to the purchase of the above captioned property ("Subject") by plaintiffs, thus, was an illegal spot assessment. The Borough's response is that the Subject was under-assessed for 2016, and the assessment should have, but was not, due to an error, increased that year. The increased assessment in 2017, per the Borough, was merely to correct that error, thus, was not a spot assessment.

For the reasons stated below, the court grants plaintiffs' summary judgment motion.

*

**FACTS**

The following facts are undisputed. The Subject is a 75'x160' parcel of land improved by a two-story single family residence. Its street address is 119 Chatham Lane.

For tax year 2012, the prior owner obtained a judgment from the Ocean County Board of Taxation ("County Board") reducing the assessment from $1,630,800 to $1,250,000. No appeal was taken by either party as to that judgment, thus, it was final.

Due to the statutory mandate of the Freeze Act, N.J.S.A. 54:3-26, and since the County Board's judgment was final, the assessor was required to maintain the same assessment, i.e., $1,250,000 for tax years 2013 and 2014 (absent a district-wide revaluation or reassessment, or a change in value of the Subject). Accordingly, the Subject was assessed at $1,250,000 for tax years 2013 and 2014.

For tax years 2015 and 2016, the same assessment of $1,250,000 was placed on the Subject. Plaintiffs purchased the Subject by deed dated November 8, 2016 for $1,800,000. By notice of assessment mailed on January 31, 2017, they were advised that the Subject's 2017 assessment was $1,630,800.

Plaintiffs' filed a timely complaint with this court alleging that the assessment should be voided as illegal, and alternatively, be reduced since it did not represent the Subject's true value. They then moved for summary judgment. In support of the same, they certified that when they contacted the assessor on two separate occasions to query about the increase in assessment, they were advised that it was due to the Subject's purchase. They further certified that the assessor's office "indicated that no other assessments" were increased in the "neighborhood." They also certified that subsequent to their purchase, they made no "major" improvements to the Subject.

2

Plaintiffs also provided an electronic printout of the assessments (for tax years 2013 to 2017) of the homes located on the same street as the Subject as follows:

| | Property | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|---|
| 1 | 101 Chatham Lane | $ 556,500 | $ 556,500 | $ 556,500 | $ 556,500 | $ 556,500 |
| 2 | 103 Chatham Lane | $1,300,000 | $1,300,000 | $1,300,000 | $1,300,000 | $1,300,000 |
| 3 | 105 Chatham Lane | $2,265,600 | $2,265,600 | $1,625,000 | $1,625,000 | $1,625,000 |
| 4 | 106 Chatham Lane | $ 462,000 | $ 462,000 | $ 462,000 | $ 462,000 | $ 462,000 |
| 5 | 107 Chatham Lane | $1,342,200 | $1,342,200 | $1,342,200 | $1,342,200 | $1,342,200 |
| 6 | 108 Chatham Lane | $ 500,300 | $ 500,300 | $ 500,300 | $ 500,300 | $ 500,300 |
| 7 | 109 Chatham Lane | $1,405,000[1] | $1,405,000 | $1,405,000 | $1,405,000 | $1,405,000 |
| 8 | 110 Chatham Lane | $ 409,800 | $ 409,800 | $ 409,800 | $ 409,800 | $ 409,800 |
| 9 | 111 Chatham Lane | $1,041,600 | $1,041,600 | $1,270,900 | $1,270,900 | $1,270,900 |
| 10 | 112 Chatham Lane | $ 531,000 | $ 531,000 | $ 531,000 | $ 531,000 | $ 531,000 |
| 11 | 113 Chatham Lane | $ 930,000[2] | $ 930,000 | $ 863,200 | $ 863,200 | $1,539,000 |
| 12 | 115 Chatham Lane | $1,423,400 | $1,423,400 | $1,423,400 | $1,423,400 | $1,423,400 |
| 13 | 117 Chatham Lane | $1,218,800 | $1,218,800 | $1,218,800 | $1,218,800 | $1,218,800 |
| 14 | 202 Chatham Lane | $ 386,500 | $ 386,500 | $ 386,500 | $ 386,500 | $ 386,500 |
| 15 | 203 Chatham Lane | $ 391,600 | $ 391,600 | $ 391,600 | $ 391,600 | $ 391,600 |
| 16 | 204 Chatham Lane | | | | | $ 196,800[3] |
| 17 | 205 Chatham Lane | $ 324,900 | $ 324,900 | $ 326,400 | $ 326,400 | $ 326,400 |
| 18 | 206 Chatham Lane | $ 273,600 | $ 273,600 | $ 273,600 | $ 273,600 | $ 273,600 |
| 19 | 207 Chatham Lane | $ 878,900 | $ 878,900 | $ 878,900 | $ 878,900 | $ 878,900 |
| 20 | 208 Chatham Lane | $ 313,100 | $ 313,100 | $ 313,100 | $ 313,100 | $ 313,100 |
| 21 | 210 Chatham Lane | $ 385,000 | $ 385,000 | $ 385,000 | $ 385,000 | $ 385,000 |
| 22 | 212 Chatham Lane | $ 292,900 | $ 292,900 | $ 292,900 | $ 292,900 | $ 292,900 |

[1] The property was purchased January 10, 2013 for $1,450,000.
[2] The property was purchased November 13, 2013 for $955,000. It appears that there was major improvement in 2016 since that is indicated as the "year built."
[3] The assessment is for land only, which was purchased January 31, 2017. The sale was marked with the non-usable ("NU") code 7. See N.J.A.C. 18:12-1.1(a)(7) ("[s]ales of property substantially improved subsequent to assessment and prior to the sale thereof"). The web excerpt did not show the prior years' assessments.

All homes were located in the same zone (R-1). All (except the vacant land) were single family homes (but of different styles and having differing amenities), thus Class 2 properties.[4] The website information pertaining to the Subject included the sale price, with an NU code 29. See N.J.A.C. 18:12-1.1(a)(29) (excluding certain sales from being used in determining the assessment-to-sales ratio, including the "sales of properties subsequent to the year of appeal where the assessed value is set by court order, consent judgment, or application of the 'Freeze Act.'").

In response, the Borough's assessor certified as follows: while the Freeze Act's protection expired for tax year 2015, nonetheless, the assessment was "erroneously carried through 2016 in the Borough's system." As a result, the Subject was "under assessed for Tax Year 2016." The Subject's purchase in November 2016 alerted the assessor's office to this "error," therefore, the 2017 assessment was "properly assessed" at $1,630,800, the amount that should have been placed on the Subject for tax year 2016. Therefore, per the assessor, the "2017 Assessment is not the result of a spot assessment."

**FINDINGS**

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2 (c). Whether there exists a genuine issue as to a material fact in dispute requires the "motion judge" to "consider whether the competent evidential materials presented" would allow a "rational factfinder" to decide in favor of the non-movant. Brill v.

---

[4] Properties located at 103, 106, and 108 Chatham Lane are described as a one-story ranch style "multifamily 2" residence. 113 Chatham Lane did not contain a description of the residence as to type/use or amenities.

Guardian Life Ins. Co., 142 N.J. 520, 523 (1995). In so doing, all facts must be "viewed in the light most favorable to the" non-movant. Ibid.

Here, the material facts as to the assessment history of the Subject, its sale in 2016, its upward revision post-sale for tax year 2017, plaintiffs' inquiries as to the increase, the assessor's response to the same that the revision was a result of the Subject's sale, and the Borough's website information as to the assessment history of the residential properties on the same street as the Subject, are all undisputed. The Borough may have attempted to create a materially disputed fact by claiming that the Subject was under-assessed for 2016, therefore, the 2017 revision was to correct this "error." However, based on the analysis below, the court finds that the naked assertions of an under-assessment and denial of a spot assessment, without more, are insufficient to overcome the motion for summary judgment.

"Singling out" one or a select few properties for "reassessment" based on the purchase of those properties is a "spot assessment" which violates our Constitution's Uniformity Clause as well the Fourteenth Amendment. Township of West Milford v. Van Decker, 120 N.J. 354, 361-62 (1990). "[U]nder no circumstances can appraised valuation of property be increased merely because it has been sold." Id. at 362. The "Welcome Stranger" pattern of spot assessments is "commonly recognized as an intentionally discriminatory practice," by reassessing only properties that were the subject of a recent sale, while leaving undisturbed the assessments of other properties in the same class that have not been sold. See Regent Care Ctr., Inc. v. City of Hackensack, 362 N.J. Super. 403, 413 (App. Div. 2003).

Not all reassessments are spot assessments. For instance, an increased assessment due to additional improvements would not necessarily be a spot assessment. Ibid. Also not necessarily invalid are reassessments of all properties of a particular class due to proven underassessment.

5

Ibid.  Similarly, if a property, whose sale listing triggered a reassessment, had been improved unbeknownst to the assessor, then that property's reassessment is permissible.  Corrado v. Township of Montclair, 18 N.J. Tax 200 (Tax 1999).  Indeed, an assessor is statutorily obligated to, on an annual basis, to determine a property's fair market value after "examination and inquiry." N.J.S.A. 54:4-23.

To be deemed unconstitutional, the assessment must be "arbitrary intentional discrimination."  Van Decker, supra, 120 N.J. at 362.  The assessor must have "acted illegitimately and unreasonably."  Shippee v. Township of Brick, 20 N.J. Tax 427, 436 (Tax 2002).  As recently noted by this court:

> If increased assessments are based on either a sale factor or a piecemeal review of only some properties, some classes of properties or some neighborhoods, such actions may constitute impermissible spot assessments. Conversely, if an assessor has relied upon independent, legitimate, and justifiable material to conclude that such property assessments should be increased, then the actions of the assessor should withstand scrutiny.
>
> [City of Elizabeth v. 264 First Street, L.L.C., 28 N.J. Tax 408, 454 (Tax 2015) (citation and internal quotation marks omitted).]

Thus, "[i]t is the job of the courts to analyze each factual situation and characterize the assessors' actions as prohibited or appropriate as each case comes before us."  Shippee, supra, 20 N.J. Tax at 430.

Here, the assessor concedes that the Subject's November 2016 sale triggered her review of its assessment.  Nonetheless she asserts that the consequent upward revision of the 2017 assessment was not a spot assessment because she was correcting a prior year's under-assessment. The court is not persuaded.

First, there is no requirement that a property's assessment must be revised post-Freeze Act protection years.  Rather, and pursuant to N.J.S.A. 54:4-23, the assessor must, after an inquiry and

examination, determine what the property's fair market value is as of October 1 of the pre-tax year. After such inquiry and examination, it may very well be the case that the property's value needs no change due to stable market conditions. Therefore, it is not a given that carrying forward a reduced assessment once the Freeze Act protection expires is an "error." See e.g. Clinton Fountain Motel, L.P. v. Township of Clinton, 18 N.J. Tax 486, 488-489 (App. Div. 1999) ("it is not intrinsically unreasonable for an assessor to assess a property at the same value as in the prior year.").

Second, while it is entirely reasonable to posit that the true value changed after expiration of the Freeze Act protection (or even during the Freeze Act years), thus requiring revision of the adjudged assessment pursuant to N.J.S.A. 54:4-23, the assessor must show information such as the lack of uniformity or change in values through objective evidence, so that the imposed assessment is not an illegal spot assessment. In the "Welcome Stranger" cases, the courts did not dispute that the recently sold properties may have been under assessed and in need of reassessment, however the troubling fact was the sole reason why they were assessed: their sale. As the Supreme Court warned, the mere sale of the property cannot justify a revised assessment. Van Decker, supra, 120 N.J. at 362.

Here, the Borough provided no information, nor referenced any studies that were undertaken by the assessor's office to show a trend of value changes or lack of uniformity in the assessments of residential properties in the Borough, or even in the Subject's neighborhood justifying a revision in the assessment. The assessor does not even indicate how she concluded that the Subject was under-assessed. She does not indicate why only the 2016 tax year was under-assessed even though the assessment was the same in tax year 2015, which was the year that the Freeze Act protection had expired. She asserts that the correct assessment for 2016 should have

been $1,630,800, yet she does not explain why that number should be carried forward, unchanged, to 2017. She does not explain why or how the 2017 assessment amount of $1,630,800 coincidentally reverted to the 2012 original assessment amount (i.e., prior to the County Board's judgment). Cf. Corrado, supra, 18 N.J. Tax at 204 (where the assessor reviewed for-sale listings, compared the descriptions therein with those on the respective property record cards, then raised the assessments based on value-based information change such as remodeled, new or expanded amenities, allowing the court to find that "there were adequate non-sales related justifications for the assessor to have changed the property record cards and the assessments."). See also Centorino v. Township of Tewksbury, 347 N.J. Super. 256, 266 (App. Div. 2001) ("the appropriate maintenance instances referred to in Van Decker involved specific situations and objective criteria relating to the constitutional underpinnings of required uniformity in assessments"), certif. denied sub nom, 172 N.J. 175 (2002).

Indeed, a cursory review of the Borough's website information provided by plaintiffs show that of the 21 properties (the land sale in 2017 of 204 Chatham Lane is not considered) on the same street as the Subject, only one had a changed assessment for 2017: 113 Chatham Lane. As to this property, from the prior year's assessments, it appears the property was substantially improved (starting in tax year 2015 and ending in tax year 2017) after its purchase in 2013, since the value allocated to improvements was reduced from $80,000 in 2013-2014, to $13,200 in 2015-2016, and thereafter increased to $689,000 for tax year 2017. Only three properties' assessments were changed for tax year 2015 (the changed amount thereafter being the same assessment for 2016 and 2017): 105 Chatham Lane where the 2014 assessment decreased in 2015; 111 Chatham Lane and 205 Chatham Lane where the 2014 assessment increased in 2015. The remaining 17 properties had the same assessment since 2013. The Borough did not address this data (gathered from its

8

website), nor explain why those properties' assessments remained unchanged since 2013. Nor was there any attempt to show whether these properties' assessments changed from 2012. Nor was there any explanation as to whether some of the properties were subject to the Freeze Act, and if so, whether those properties assessments were also revised post-Freeze Act protection years on grounds their prior assessments were not reflective of fair market value as evidenced by one or more objective indicia.

Thus, the assessor's contention of the Subject's uncorrected under-assessment for 2016 as warranting a revision in 2017, her bald assertion that the revision was not a spot assessment, and her lack of contradiction to plaintiffs' averments that she had revised the Subject's assessment due to its sale, simply does not establish a "legitimate non-sales related justification[]." Centorino, supra, 347 N.J. Super. at 265-66 ("where the assessor's" reasons for revising a property's assessment is "not readily discernable, the tax assessor must establish additional objective proofs as to the property in question, and in relation to other properties in the neighborhood, . . . to justify his statement that the subject property was not singled out solely on the basis of its sale."). Based on the above undisputed facts, the court concludes that the only reason why the assessor revised the Subject's assessment was its sale.

A court must deny summary judgment "only where the [non-movant] has come forward with evidence that creates a 'genuine issue as to any material fact challenged.'' Brill, supra, 142 N.J. at 529 (quoting R. 4:46-2). Even viewing the facts in the light most favorable to the non-moving party, the court finds the unsupported assertions of an uncorrected under-assessment and denial of a spot assessment, is not evidence that there is a genuine issue of a materially disputed fact.

9

**CONCLUSION**

Based on the undisputed facts and as a matter of law, the court grants the plaintiffs' summary judgment motion for the foregoing reasons.

Very Truly Yours,

Mala Sundar, J.T.C.